PHILLIP M. SEILER & others *vs.* BOARD OF SEWER COM-
MISSIONERS OF HINGHAM.

Plymouth. November 8, 1967. — January 3, 1968.

Present: WILKINS, C.J., CUTTER, SPIEGEL, & REARDON, JJ.

*Sewer.   Taxation,* Betterment, Sewer assessment.

Where it appeared that in an area of a coastal town a sewer system dis-
charging into the ocean was constructed and each of the users thereof
paid a certain sum "for the permanent privilege to his estate," and
that many years later, when it had been determined that the discharge
of the sewage into the ocean was creating a health menace and the ex-
isting system was incorporated in a newly constructed system for a
district of the town including such area, the discharge into the ocean
was eliminated and the sewage from the entire system became dis-
charged into the Metropolitan District system, it was held that by
such changes the estates on the original portion of the system received
special benefit justifying assessments on those estates not in excess
of the benefit, and that the town's sewer board was not required to
allocate Federal grants and town funds in connection with the ex-
tended project in such a manner as to put the burden of assessments
wholly on the estates located on the new portion of the system.

PETITION filed in the Superior Court on March 4, 1966.

The case was heard by *Murray,* J.

*Stuart DeBard* for the petitioners.

*John R. Hally (Nathan Newbury, III,* with him), for the
respondent.

SPIEGEL, J. This is an appeal from an order of the
Superior Court dismissing a petition for a writ of certiorari
to quash the assessments made by the respondent board
of sewer commissioners of Hingham against the petitioners'
estates for a proportional part of the cost of a new sewer
system in the town of Hingham. The petitioners are the
owners of twenty-nine parcels of real estate in the Crow
Point section of Hingham.

The case was tried on an "Agreed Statement of Facts,"
and the exhibits are before us. We state the agreed facts
as summarized by the trial judge in his memorandum and

order. "In 1900 common sewers were constructed in the public ways, on which the several estates of the petitioners now abut, by the Town pursuant to authorization granted at the annual town meeting of that year. These sewers all discharged through an outflow sewer constructed in Hingham Bay. The outflow sewer emptied into a channel in the Bay about 700 feet from shore. The houses served by the sewers in 1900 were used almost exclusively for seasonal occupancy. At said annual meeting it was determined that the cost of the sewers and outflow sewer, estimated at $4800., should be met by the Town paying $2500. and that 'every person who uses the common sewer to be constructed at Crow Point shall pay for the permanent privilege to his estate such reasonable sum as the Selectmen shall determine.' This latter determination was pursuant to P. S. c. 50, § 8, which authorized the Town to provide 'that, instead of paying an assessment under section four every person who uses such . . . common sewers in any manner shall pay for the permanent privilege to his estate such reasonable sum' as the selectmen shall determine. See now General Laws c. 83, §§ 17, 14. The selectmen determined upon the sum of $75.00. No new construction of said common sewers or changes in design thereof or method of operation occurred until the work done by the Board and described . . . [below]. Meanwhile, beginning about 1934, the discharge of raw sewage through the outflow pipe, which was falling into disrepair, was causing a health menace in the judgment of the Board of Health of the Town, and, in the judgment of the respondent Board, the pollution in Hingham Harbor caused by such raw sewage had to be brought to an end. By Chapter 82 of the Acts of 1946 the Town was authorized to 'lay out, construct, maintain and operate a system or systems of . . . common sewers for the north sewer district of the town as defined . . . [by statute], with such connections, pumping stations and other works as may be required for a system of sewage disposal . . . .' Commencing in 1955 the Town has constructed . . . a system of common sewers

for the North Sewer District, which includes as part thereof the Crow Point section and the public ways on which the several estates of the petitioners abut. Among the changes wrought by the Board in the sewers constructed in 1900 was the elimination of the outflow sewer and the substitution for it of the newly constructed means and method of discharge . . . . By such change sewage now deposited in the 1900 sewer system no longer discharges into Hingham Bay, but, by the system newly constructed by the Town since 1955, flows . . . [through various new gravity and force mains and pumping stations] ultimately to the Metropolitan District Sewer System. With the exception of the rights claimed by petitioners by reason of the 1900 sewer construction and the determination that every person who used such 1900 sewers should pay $75. for the permanent privilege to his estate of such user, petitioners agree that all action of the respondent in constructing the sewers commencing in 1955 and in making the assessments in relation to such construction were in accordance with the applicable statutes and votes of the Town. By section 8 of Chapter 82 of the Acts of 1946 the Town was authorized to determine what proportion 'not less than one-fourth nor more than two-thirds of the whole cost' of the 'system or systems of sewerage and sewage disposal the Town shall pay . . . ,' and . . . in 'providing for the payment of the remaining portion of the cost of the system . . . or for the use of the system . . . , the Town may avail itself of any or all of the methods permitted by general laws . . . .' The vote of the Town at the 1955 annual meeting determined that the Town shall pay 65% of the whole cost of the system of sewers for the North Sewer District, and that the 'remaining portion of the cost . . . shall be provided for by assessments upon the owners of lands abutting on that part of any way in which a sewer is constructed according to the frontage of land on such way at the rate of $5.00 per linear foot of such frontage, provided that in no case shall any sewer assessment be made in excess of the actual benefit.' The estates of petitioners constitute

a small number of the estates assessed by the respondents, and have been assessed in the same manner 'for the remaining portion of the cost of the system' as the owners of other estates on Crow Point situated on public ways where new sewers have been constructed since 1955."

The judge stated that the "Substitution of the newly constructed mains, sewers and pumping stations . . . for the old outflow sewer, (1) eliminated that part of the 1900 sewer system which had fallen into disrepair, (2) eliminated the health menace caused by the presence of raw sewage in Hingham Bay, around Crow Point and in Hingham Harbor, due to the design and operation of the 1900 sewer system, and (3) provided the 1900 sewer system with up-to-date means and methods for discharge of sewage collected in it." He concluded that the foregoing constituted a special benefit to the petitioners which justifies the assessments in question. The main thrust of the petitioners' appeal appears to be directed at this last conclusion.

The petitioners argue that they have paid for the 1900 sewer system which has not been replaced; that the new sewer system is primarily for the benefit of other sections which had no preëxisting sewer system; and that the mere provision of a new outlet for their preëxisting sewer system does not rise to the level of a special benefit to them. They cite *Ayer* v. *Mayor & Aldermen of Somerville,* 143 Mass. 585, in support of this proposition. In that case, this court refused relief to a landowner abutting a new sewer system who complained that he was unfairly assessed for its cost when abutters on another system, which drained through the one on which he abutted, were not so assessed. However, we stated that "in some cases, it might be just and reasonable to require owners of lands upon an upper or tributary sewer to contribute something towards the cost of making and maintaining a lower sewer, used as a means of discharge for the upper one," although we declined to make any general rule to that effect, *supra,* at 587. Equally undispositive is *Sears* v. *Street Commrs. of Boston,* 173 Mass.

350, cited by the petitioners where new assessments to cover the cost of remotely connected sewers were discussed. There, protection from new assessments was limited to cases "Where lands have paid assessments for special benefits from the construction of *all sewers by whose operation they are* affected . . ." 173 Mass. at 353 (emphasis supplied). The issue for determination in the instant case remains whether the new sewers and discharge systems affect the petitioners so as to give them a special benefit.

The petitioners' position is that the only benefit conferred on them by the new sewer system is the abatement of pollution in Hingham Harbor. They maintain that this benefits them less than the rest of the residents of Hingham, since the petitioners' lands front on Hingham Bay which the tidal currents keep free of pollution from the discharge pipe of the 1900 sewer system. At most they are benefited equally with all other residents of Hingham. The continued existence and functioning of the 1900 system, it is contended, rebuts any other special benefit to them from the new construction.

Whether the pollution adversely affects the petitioners' frontage on Hingham Bay is not the controlling factor. It is not contested that the pollution problem existed, and that the further discharge of raw sewage into Hingham Bay from the 1900 sewer system could not be tolerated. It follows that prior to the new construction the 1900 sewer system on which the petitioners' estates abut was not functioning properly, in that it had no usable outlet. The respondent could have chosen to repair and extend the old discharge pipe into the bay. This might also have required other efforts to prevent the continued discharge of raw sewage. Such a project, exclusively for the benefit of the users of the 1900 system, could undeniably have been assessed to the petitioners and to their fellow abutters. That the respondent chose to solve this problem by tying the 1900 system into a new and general plan for the disposal of sewage through the Metropolitan District System does not diminish the special benefit to the petitioners.

We agree with the judge that "The Town was not bound to maintain the design of the 1900 sewer system in perpetuity by the vote taken at the annual meeting of 1900. Neither that vote nor any payments made or to be made thereunder are a bar to assessments otherwise validly made for any changes in the design of that system or improvements thereto which result in special and peculiar benefits to the estates owned by the petitioners."

The petitioners also argue that general town revenues and Federal grants used for the North Sewer District project should have been allocated to cover that portion of the construction from which they derive benefit, with the remainder assessed against only those estates abutting on new sewer laterals. It having been determined that the petitioners derive special benefits from the incorporation of the 1900 sewer system into the North Sewer District, they are liable to assessment for a proportional share of the general cost. There is nothing to compel the respondent to allocate funds so as to put the general burden exclusively on abutters other than on the petitioners. In view of the difficulty of attempting to estimate benefits to the estates individually, it is necessary only that the principle by which the expenditures are apportioned provide for reasonable and proportional assessments, not substantially in excess of the benefits received. There is nothing to show that the assessments have not been made in conformity with these requirements.

There was no error in refusing to quash the assessments.

*Order affirmed.*