EXETER REALTY CORPORATION *vs.* TOWN OF BEDFORD
& others.

Middlesex. November 4, 1969. — November 26, 1969.

Present: SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Sewer. Municipal Corporations*, Sewer. *Taxation*, Sewer assessment. *Bedford.*

Provisions of the by-laws of the town of Bedford, that developers, when required to install the sewer lines in their developments, should bear the entire cost of the installations and the cost of connecting such lines with the town's sewer system, and also should pay "an entrance fee for the permanent use of the . . . sewer system" based on frontage serviced at a rate per foot determined by certain town officials, who determined it at a rate one-half of that determined for instances where the town itself installed the sewer lines in developments, were valid under G. L. c. 83, § 17, and related sections, and St. 1947, c. 223, as amended by St. 1952, c. 131; nothing in G. L. c. 83, § 22, precluded such "entrance fee."

BILL IN EQUITY filed in the Superior Court on May 27, 1968.

The suit was reported by *Lappin*, J.

*Robert J. Sherer* for the plaintiff.

*Acheson H. Callaghan, Jr.* (*Richard B. Donovan*, Town Counsel, & *Norman P. Cohen* with him), for the defendants.

CUTTER, J. The plaintiff (Exeter) by its bill seeks declaratory relief against the town, the town building in-

spector, and the collector of taxes. The case, before us on a statement of agreed facts, was reserved and reported without decision at the request of all parties who appeared and answered.

Exeter, as indirect successor in title to Lido Construction Co. Inc. (Lido), owns lots numbered 17 through 28 in a subdivision known as Whispering Pines, Section V. When Lido in 1963 sought approval of Section V as a subdivision, the town planning board required that all lots in the subdivision be connected with the town sewer system. Lido agreed in writing with the selectmen to pay an entrance fee for this connection of $2.50 a front foot for each lot, before an occupancy permit would be given.

Exeter, at its own expense, installed sewer mains within the subdivision at least to serve all the lots here discussed. Lots nos. 17 through 28 are connected to these sewer mains and (through Section IV of the Whispering Pines subdivision which lies to the west of Section V) are also indirectly connected with the town's sewer system. These lots can be drained by gravity feed into the town's system. Exeter has built a house on each of six lots. The building inspector has refused to issue occupancy permits until the sewer entrance fees, all now unpaid, are in fact paid. The houses comply with the building code unless the payment of sewer assessments or entrance fees is a valid condition precedent to use of the town sewer system. The "amount of the sewer assessments or entrance fees . . . imposed by the [t]own does not exceed the benefit to the individual lots 17 through 28 as a result of their connection to the [t]own's . . . system."

The town has authority to impose sewer assessments and entrance fees under St. 1947, c. 223, as amended by St. 1952, c. 131. By § 7 (as it appears in § 3 of the 1952 statute) "the town may avail itself of any or all methods permitted by the General Laws, including annual charges as provided for in . . . [c. 83, § 16,] which may be applied to the . . . cost of maintenance and repairs . . . . or of any debt . . . for sewer purposes, and to defray such portion of the cost of

the construction of the . . . works as may be determined by the town, and such charges and assessments shall be paid by every person . . . who enters his . . . particular sewer into the . . . system of the town." The town determined to defray part of the cost of its system by assessments as indicated in the margin.[1] The selectmen voted to set the assessment rate at $2.50 a front foot for abutters where sewer lines were installed by developers and $5 a front foot where sewer lines were installed by the town itself.

Article 22, § 4, of the general town by-laws provides that "[s]ub-dividers or developers when required by . . . [specified town officers] to install sewer lines within the area, shall bear the entire cost of such sewer lines and appurtenances within the area and the connection with the [t]own's sewer system and such sub-dividers or developers shall also be assessed an entrance fee for the permanent use of the [t]own's sewer system. This fee shall be based on per foot frontage that can be serviced." Section 2 of art. 22 provides, "A betterment assessment or an entrance fee, according to the per foot frontage services [*sic*, apparently a misspelling of 'serviced'] shall be assessed to all abutters in the residential . . . areas on the gravity sewer lines installed by the [t]own." Article 22, § 10, authorizes the board of public works (the selectmen) to establish the rate. This they have done, as already indicated.

Exeter now contends that art. 22, § 4, is invalid. It argues that § 4 exceeds the authority of the town. The town

---

[1] At the annual town meeting in 1952, the town voted to construct a pumping station and "force mains . . . to carry sewage from Bedford . . . through . . . Lexington," and also "voted that it would pay 40% of the cost of the system . . . and the remainder of the cost would be paid by assessments . . . on abutters." At a special meeting on June 3, 1958, this vote was amended so that the town would pay all of the main pumping station costs and the costs of the outfall lines to and within Lexington, but "that, with certain exceptions, abutters on sewer lines would pay for 60% of the cost of the remainder of the entire system." This is consistent with art. 22 of the town's general by-laws dealing with the sewer system. By votes at town meetings in 1959, 1963, and 1964, the town trunk sewer lines were extended to the portion of the town near and beyond Whispering Pines and were connected with Whispering Pines, Section IV, to the west of the lots owned by Exeter.

contends that it properly may require Exeter not only (a) to pay the direct cost of constructing the sewer within the subdivision directly serving Exeter's lots in Section V of the subdivision, but also (b) to pay (by the entrance fee assessments made upon Exeter) Exeter's proportional share of that part of the total cost of the town's sewer system assessed upon landowners who use it (after making due allowance for Exeter's expenditures for the sewer within the subdivision).

1. The 1947 and 1952 special acts under which the town is acting refer to the pertinent provisions of G. L. c. 83, §§ 14–18, set out in part in the margin.[2] Section 14 permits an assessment, to persons using a common town sewer, of "a proportional part" of the cost of building the sewer, and "of the charge, not already assessed" of constructing the sewers through which the first common sewer discharges. In the present case, this would mean that, if the town had built the sewer in front of Exeter's lots within Section V of the subdivision, Exeter could have been required to pay

---

[2] These provisions include: § 14. "A person who enters his particular drain into a . . . common sewer, or who *by more remote means receives benefit thereby* for draining his land . . . shall pay to the town a proportional part of the charge of making and repairing the same, and *of the charge, not already assessed, of making* and repairing *other . . . common sewers through which the same discharges,* which shall be ascertained, assessed and certified by the . . . selectmen . . . ." § 15. ". . . [A] town may adopt a system of sewerage for a part or the whole of its territory, and may provide that assessments under . . . [§ 14] shall be made upon owners of land within such territory by a fixed uniform rate, based upon the estimated average cost of all the sewers therein, according to the frontage of such land on any way in which a sewer is constructed . . . but no assessment in respect to any such land, which by reason of its grade or level . . . cannot be drained into such sewer, shall be made until such incapacity is removed. . . ." (Section 15A omitted.) § 16 (as amended through St. 1961, c. 311). "The . . . selectmen . . . may from time to time establish . . . equitable annual charges for the use of common sewers, which shall be paid by every person who enters his particular sewer therein. The money so received may be applied to the payment of . . . maintenance and repairs . . . or of any debt contracted for sewer purposes." § 17. ". . . [A] town in which . . . common sewers are laid may determine that a person who uses such . . . common sewers in any manner, *instead of paying an assessment under* . . . [§ 14], shall pay for the permanent privilege of his estate such reasonable amount as the . . . selectmen . . . shall determine." § 18. ". . . [A] town which itself is, or the officers of which are, entitled, under . . . [§§ 14 to 17] or under any special act, to assess upon land the whole or a part of the cost of laying, making, maintaining or repairing . . . common sewers, may determine that such assessments shall be made by *two or more* of the methods provided in said sections or special acts, *and may determine what part of the expense or estimated average cost shall be paid under each method*" (emphasis supplied).

not only (a) a proportional part of the cost of that sewer, but also (b) a proportional part, so far as the betterment had not already been assessed, of the cost of the main town sewer system through which the Section V sewer discharges. Authority for the latter assessment is found in c. 83, §§ 14 and 15 (fn. 2). See *Leominster* v. *Conant,* 139 Mass. 384, 386–388. See also Nichols, Taxation in Massachusetts (3d ed.) 813–822; Hardy, Municipal Law, § 587.

Annual charges for the repair and maintenance of common sewers are permitted by § 16. Section 17 permits a charge "for the permanent privilege" of using a common sewer, which an owner shall pay "instead of paying an assessment under" § 14. The reference to § 14 found in § 17 indicates that any charge made under the authority of § 17 is in effect a benefit assessment and not an annual charge like that under § 16. Section 18 permits a town or its officers to "determine that . . . assessments [under §§ 14–17] shall be made by two or more of the methods provided in said sections." The town has selected the method authorized by c. 83, § 17, and acting through its by-laws, art. 22, § 2, quoted above, has imposed an entrance fee on all abutters on a front foot basis.

The rate has been established under art. 22, § 10, on a uniform basis which applies art. 22, §§ 3 [3] and 4 (already quoted). Where the town itself has built the sewer which directly serves a lot, it charges the owner a betterment assessment of $5 a front foot in the form of an entrance fee for the permanent use of the whole town sewer system, including that portion which directly serves the lot. Where the sewers in a subdivision, directly serving a particular lot (but connecting with the town system), are laid at the expense of the owner or his predecessor in title, then the town charges an entrance fee of only $2.50 a front foot. This lower rate in effect reflects (a) the expenditure by the owner

---

[3] Section 3 reads, "In residential . . . areas where sewer lines are installed by other than the [t]own, an entrance fee shall be assessed to each abutter within that area. This fee shall be based on per foot frontage serviced."

within the subdivision for a sewer which has become, or will become, a part of the town system, and (b) that the benefit to such an owner from the sewer immediately serving his land has already been paid for by him directly or indirectly.

Nothing in G. L. c. 83, § 22,[4] prevents this betterment assessment. The lower charge ($2.50 a front foot) imposed on Exeter is a reasonable attempt to avoid any assessment of benefit for the sewer within the subdivision.

The construction of the sewer within Section V of the subdivision was done by Lido under the town's supervision. The agreement with Lido to pay the entrance fees was duly recorded. There was appropriate compliance with G. L. c. 83, § 27 (as amended through St. 1943, c. 252, § 5), in the circumstances.

Nothing in this record suggests that the selectmen in fixing these charges (a) have improperly estimated the proportional part of the costs on a front foot basis, or (b) have made an improper differential to reflect the benefit to the town from having a sewer built by the developers within the limits of the subdivision, thus saving the town that expense. It is agreed that the sewers built by or for Exeter within Section V of the subdivision have become or will become the property of the town when accepted. The estimates are doubtless approximations (see *Cheney* v. *Beverly,* 188 Mass. 81, 84) but they have not been shown to be unreasonable. We hold that the provisions of art. 22 of the town by-laws, as applied to Exeter, are valid.

The entrance fee charged to Exeter under the authority of c. 83, § 17, is not a mere connection charge for the cost of connecting a private drain with a main sewer system like that contrasted in *O'Malley* v. *Commissioner of Pub. Works of Boston,* 340 Mass. 542, 548–549, with "an assessment . . .

---

[4] Section 22 reads, "If . . . [a] by-law provides that any . . . sewer laid in any land or way, public or private, which is . . . to be opened for public travel . . . shall be a . . . common sewer, and such . . . sewer is laid in a private way or land at the expense of the owner thereof, his land shall not be assessed *for such* . . . *sewer,* except for the cost of connecting it with common . . . sewers already established" (emphasis supplied).

made under the general taxing power to levy betterments" proportionally, since no assessment has previously been made reflecting the benefit to Exeter's property on account of the town's general sewer system. In the *O'Malley* case, *supra*, at pp. 550–551, we recognized that, if no prior betterment assessment of a parcel had been made on account of a sewer construction when the sewer was built, the city might not be precluded from making such an assessment later when that parcel first received benefit from the sewer improvement. See *O'Malley* v. *Public Improvement Commn. of Boston*, 342 Mass. 624, 628–629. See also *Seiler* v. *Sewer Commrs. of Hingham*, 353 Mass. 452, 455–457.

The town in making the assessment on Exeter need not rely upon its 1963 agreement with Lido that Lido would pay an entrance fee when the subdivision lots were connected with the town sewers. The town had authority to make the assessment under art. 22 of its general by-laws. We thus need not consider the validity of Lido's agreement.

We were informed by Exeter's counsel at the arguments that Exeter had deposited in an escrow fund an amount sufficient to meet the entrance assessment. There thus is no occasion to consider whether the town has a valid lien on Exeter's lots.

The case is remanded to the Superior Court for the framing of a decree declaring the rights of the parties in a manner consistent with this opinion.

*So ordered.*