STATE LINE SNACKS CORP. vs. TOWN OF WILBRAHAM.

No. 89-P-159.

Hampden. December 15, 1989. - June 27, 1990.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Municipal Corporations*, Sewers. *Sewer*. *Contract*, Construction of contract. *Taxation*, Betterment, Sewer assessment.

At the jury-waived trial of an action concerning a contract between a town and a user of the town's sewage treatment facility, the judge's findings and rulings did not improperly rely on parol evidence and, where the trial transcript was not included as part of the record on appeal, errors, if any, in the judge's receiving certain parol evidence were not capable of review. [719-720]

In a civil action concerning a twenty-year installment payment contract between a town and a user of the town's sewage treatment facility, the judge correctly concluded that the payments under the contract were assessments for 1974 construction costs under G. L. c. 83, § 14, and not a "one-time" flat fee assessment under § 17 of that chapter, with the result that the user was responsible for further betterments assessments for improvements to the sewage treatment facility undertaken some years later. [721-723]

CIVIL ACTION commenced in the Superior Court Department on February 16, 1984.

The case was heard by *Andrew G. Meyer*, J.

*Alice E. Zaft* for the plaintiff.

*Jeffrey L. McCormick* for the defendant.

PERRETTA, J. In the early 1970's, the town of Wilbraham constructed a sewage treatment facility which was paid for, in part, by proportional assessments upon all landowners in the town. Large users of the facility, such as State Line Snacks Corp. (State Line), were charged more than residential users. To alleviate the burden of the payments, the town entered into long-term (twenty years) installment payment contracts with the large commercial users. State Line en-

tered into its contract on June 18, 1974. In the mid 1980's, the town determined that it was necessary to rehabilitate and add to its sewage treatment facilities. The new system was completed in 1988, and the town assessed betterments charges. State Line then brought this action seeking a declaration that, by the 1974 contract, the town had conferred a permanent privilege, under G. L. c. 83, § 17, upon State Line which precluded imposition of the betterments charge upon it. The judge concluded that the 1974 contract pertained only to the 1974 facility and that, even assuming that the contract had conferred a permanent privilege upon State Line, the new system afforded it a special benefit for which it must pay its fair share. We agree and affirm the judgment.

I. *Sewer Assessments.*

General Laws, c. 83, §§ 14 through 24, set out the authority and procedure for sewer assessments. "Section 14 permits an assessment to persons using a common town sewer, of 'a proportional part' of the cost of building the sewer, and 'of the charge, not already assessed' of constructing the sewers through which the first common sewer discharges." *Exeter Realty Corp.* v. *Bedford,* 356 Mass. 399, 402 (1969). These sewage system assessments may be made upon landowners within the town by a uniform rate set in accordance with § 15, which thereafter, from time to time, may be redetermined. See § 15A. Section 16 allows for annual charges for the use of common sewers, and that money is applied to the cost of repairs to and maintenance of the common sewers.

As permitted by § 17, a "town in which main drains or common sewers are laid may determine that a person who uses such main drains or common sewers in any manner, instead of paying an assessment under section fourteen, shall pay for the permanent privilege of his estate such reasonable amount as the . . . [town] shall determine." This "reference to § 14 found in § 17 indicates that any charge made under the authority of § 17 is in effect a benefit assessment and not an annual charge like that under § 16." *Exeter Realty Corp.* v. *Bedford,* 356 Mass. at 403.

In sum, a town may assess a benefits charge under either § 14 or § 17, as well as an annual charge under § 16. It is State Line's argument that the 1974 contract is an agreement with the town that State Line would pay a "one-time" assessment under § 17 and its annual use charges assessed under § 16. The town contends that the payments required under the contract represent State Line's proportionate share of the construction cost of the 1974 facility, assessed pursuant to § 14 and determined in accordance with the formula specified in the agreement.

II. *Circumstances of the Dispute.*

Before describing the circumstances which led to this dispute, we take up State Line's claim that the judge committed reversible error in respect to his rulings concerning parol evidence. In his memorandum of decision, the judge wrote that the "1974 contract does not indicate any ambiguity calling for parol evidence as to the intent of the parties" in entering into that contract. State Line argues, with generous references in its brief to the trial transcript, that the judge in fact received and relied upon parol evidence to ascertain the intent of the parties. However, it does not appear from State Line's brief, at least with any clarity, that it takes the position that parol evidence was inadmissible. Rather, the gravamen of State Line's complaint is that the judge received parol evidence from the town as to its intent while excluding like evidence offered by State Line.

There are two responses to State Line's claim. In the first instance, as we read the judge's decision, he did not take the position that, because he concluded that the contract was free of ambiguity, parol evidence was inadmissible. See *Robert Indus., Inc.* v. *Spence,* 362 Mass. 751, 754 (1973); *Computer Sys. of America, Inc.* v. *Western Reserve Life Assur. Co.,* 19 Mass. App. Ct. 430, 433-434 n.5 (1985). Putting his above quoted statement, concerning parol evidence and the contract, in its proper context, the judge was simply expressing his view that the parol evidence was consistent with the obvious intent of the parties as it appeared from the language of the contract itself. Moreover, much of the parol evi-

dence set out by him in his decision was done for the purpose of providing a "bit of history" which he described as "helpful, but not essential," to an understanding of the contract.

Secondly, we view it an unlikely proposition that the judge arbitrarily took parol evidence only from the town. If the judge made erroneous rulings of law concerning the admissibility of evidence offered by State Line, we are unable to review those rulings. State Line has failed to include in the record appendix, or otherwise bring before us, the trial transcript. See Mass.R.A.P. 8(b), 18(a) and (b), all as amended in relevant part, 378 Mass. 932-933, 940-941 (1979). See and compare *Kunen* v. *First Agric. Natl. Bank*, 6 Mass. App. Ct. 684, 690-691 (1978), with *Holleman* v. *Gibbons*, 27 Mass. App. Ct. 563, 567-568 (1989). We relate the facts as the judge found them.

Construction of the sewage treatment facility in 1974 was due, in part, to pressure brought to bear upon the town by the Department of Environmental Quality Engineering (DEQE) and the United States Environmental Protection Agency (EPA). Both the DEQE and the EPA approved all the plans for the facility, which was paid for in large measure (about ninety percent) by State and Federal grant money.

After 1974, the town's needs changed, as did the State and Federal regulations with which the town was required to comply. The town's effluent levels increased substantially. By the early 1980's, it had become apparent to the town that it should consider a "tie in" with the city of Springfield's system. The town retained Ward Engineering, Inc. (Ward), to analyze its problems and propose solutions. Ward presented a report, "Facilities Plan for Waste Water Treatment and Water Pollution Control, . . . February, 1982," recommending the Springfield "tie-in," as well as modifications of the town's existing plant. These recommendations were accepted and implemented. On March 24, 1988, State Line was sent a "Betterment or Special Assessment" charge which it claims is "in derogation of and inconsistent with" the terms of its 1974 contract.

III. *The 1974 Contract.*

"In making our construction we are guided by recognized principles, one of which is that a contract is to be construed to give a reasonable effect to each of its provisions if possible. *S.D. Shaw & Sons* v. *Joseph Rugo, Inc.*, 343 Mass. 635, 640 [1962], and cases cited. Another principle is that a contract should be construed so as to give it effect as a rational business instrument and in a manner which will carry out the intention of the parties. *New York Cent. R.R.* v. *New England Merchants Natl. Bank*, 344 Mass. 709, 714 [1962]." *McMahon* v. *Monarch Life Ins. Co.*, 345 Mass. 261, 264 (1962). See also *Stop & Shop, Inc.* v. *Ganem*, 347 Mass. 697, 701 (1964) ("Justice, common sense and the probable intention of the parties are guides to construction of a written instrument"). Applying these principles to the present contract, we agree with the judge's reading: "The manifest purpose of the contract was to allocate properly State Line's share of the new sewage treatment plant and to specify in writing the total cost to State Line and how that cost, including interest payments, should be spread out over twenty years."

State Line's argument that the contract constitutes a one-time assessment under § 17 is based almost exclusively upon that portion of par. 4.1 of art. 4 of the 1974 contract, "Allocation and Payment of Costs," which reads: "For reception, treatment and disposal of State Line Potato Chip's sewage in the Town's treatment facilities providing satisfactory secondary treatment or higher degree of treatment is required to meet Federal or State Laws, State Line Potato Chip will pay the town its proportionate share of the Total Capital Investment by the Town (exclusive of Federal and State Grants) for facilities attributable to serve State Line Potato Chip's sewage; State Line Potato Chip's share in dollars will be the sum of the costs for each element of the facilities by the following general allocation formula. . . ." The technical formula which thereafter follows is based upon the "Total Capital Cost apportioned" for the various components of the facility, e.g., hydraulic elements, aeration and stabilization

tanks, grit removal structures, clarifiers, and technical services.

If there is support for State Line's argument in that language, it is undermined by the other provisions of the contract. Paragraphs 4.2.1, 4.2.2, and 4.2.3 reinforce the conclusion that art. 4 is no more than an explanation of the formulas used to determine State Line's proportional share of the cost of the 1974 facility.[1] Moreover, the language relied upon by State Line, with its reference to State and Federal laws, must be read with art. 2, which reasonably can be read as containing an acknowledgement that environmental laws and regulations are highly susceptible to change.

State Line's insistence that other language in the contract (primarily art. 5, "Capital Allocation Costs") is indicative of a § 17 flat fee depends upon testimony which is not before us for reasons previously explained. There is nothing in any of the contract language cited by State Line which remotely suggests that the contract constitutes an agreement for ongoing use of the town's facilities for a one-time assessment, irrespective of additional capital improvements. Compare *Seiler* v. *Board of Sewer Commrs. of Hingham*, 353 Mass. 452, 453 (1968). Finally, but worthy of passing mention, is the reflection that, if the contract were construed consistently with State Line's reading, it would defy common sense to think that the town would have signed it. Cf. *Malone* v. *Commonwealth*, 378 Mass. 74, 83-84 (1979).

IV. *Special Benefit.*

As an alternative basis for his conclusion that the 1974 contract does not relieve State Line from its obligations to pay new betterments charges, the judge found that the 1988 modifications to the facility and the Springfield "tie-in" provided State Line with a special benefit. Specifically, the judge found that, by the town's improvements, State Line

---

[1]Paragraph 4.2 provides that the "design capacity for capital allocations shall be on the following design basis for each element of the sewerage works . . ." As set out in paragraphs 4.2.1, 4.2.2, and 4.2.3, the elements of the "sewerage works" are the "Treatment Plant" and "Technical Services."

"has avoided the cost of constructing an additional pretreatment system as mentioned in the Ward report." We are bound by this finding, and disregard State Line's argument to the contrary, as there is nothing in the record appendix to show that it is erroneous. State Line's argument that *Seiler* v. *Board of Sewer Commrs. of Hingham, supra,* is distinguishable, in that it was based upon an "antiquated town vote" rather than a contract, requires no discussion.

*Judgment affirmed.*