NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1111                                        Appeals Court

NINETY SIX, LLC  vs.  WAREHAM FIRE DISTRICT.

No. 16-P-1111.

Plymouth.      September 12, 2017. - February 14, 2018.

Present:  Milkey, Hanlon, & Shin, JJ.

Municipal Corporations, Water commissioners, Water installation
     fee.  Real Property, Water.  Water.  Jurisdiction, Water
     charge.  Subdivision Control, Municipal services.
     Taxation, Real estate tax:  assessment.  Zoning.
     Administrative Law, Exhaustion of remedies.  Practice,
     Civil, Review of administrative action, Case stated.

Civil action commenced in the Superior Court Department on
June 22, 2010.

The case was heard by Robert C. Cosgrove, J.

David T. Gay for the plaintiff.
John Allen Markey, Jr., for the defendant.

SHIN, J.  This appeal concerns the validity of water

betterment assessments imposed by the Wareham fire district

(district) on several large parcels of undeveloped land owned by

the plaintiff.  The district determined the amount of the

assessments pursuant to G. L. c. 40, § 42K, which provides for a method of calculation based on "the total number of existing and potential water units to be served" by the new water mains, with "[p]otential water units . . . calculated on the basis of zoning in effect at the date of assessment." Construing this language to allow consideration of the full development potential of the land, the district assessed the plaintiff's property based on the maximum number of lots that could be created from each parcel, including the potential subdivision lots that each parcel could yield under the town of Wareham's subdivision rules and regulations (subdivision rules).

The plaintiff filed suit in Superior Court seeking, among other forms of relief, a declaratory judgment that the district misapplied G. L. c. 40, § 42K, by including potential subdivision lots in its calculation, rather than limiting the assessments to "approval not required" (ANR) lots.[1] After the parties submitted the matter for decision on a case stated basis, the judge found and declared that the "[d]istrict[] followed an appropriate method of calculating betterment assessments under G. L. c. 40, § 42K."[2] The plaintiff appeals,

_____

[1] See our discussion of G. L. c. 41, § 81L, infra.

[2] The judge still ruled partially in the plaintiff's favor with respect to two of the assessments (as to Lots 1000 and 1018) after the district conceded that it had overestimated the development potential of those parcels. The district does not

raising three arguments: (1) that § 42K prohibited the district from assessing betterments on subdivision lots because the subdivision rules were adopted pursuant to the subdivision control law, G. L. c. 41, §§ 81K to 81GG, and not the Zoning Act, G. L. c. 40A; (2) that the enabling statute, G. L. c. 40, § 42G, prohibited the district from assessing betterments on land that has no frontage on the ways in which the new water mains will be installed; and (3) that the assessments were unreasonable and disproportionate. As we conclude that the district's betterment assessment policy is consistent with the statutory scheme and purpose, and that the plaintiff failed to meet its burden of proving that the assessments were unreasonable or disproportionate, we affirm.

Background. 1. Statutory framework. General Laws c. 40, § 42G, inserted by St. 1955, c. 332, authorizes a municipality "having a water supply or water distributing system" to "provide by ordinance, by-law or vote for the levy of special assessments to meet the whole or part of the cost thereafter incurred of laying pipes in public and private ways for the conveyance or distribution of water to its inhabitants." The special assessment may be charged, in "proportionate part," to any

---

appeal from those rulings. In keeping with its theory as to ANR lots, the plaintiff argues there should have been a greater reduction for Lot 1000, but brings no appeal as to the further reduction it had requested for Lot 1018.

"owner of land which receives benefit from the laying of water pipes in public and private ways upon which his land abuts or which by more remote means receives benefit through the supply of water to his land or buildings."  Ibid.

The Legislature originally provided for betterment assessments to be calculated by applying a "fixed uniform rate," based on the estimated cost of laying the water pipes, according to (1) the frontage of the benefited land on the way in which the water pipe will be laid, (2) the land area within a fixed depth from the way, (3) the valuation of the land, or (4) any combination of these measures.  G. L. c. 40, § 42H, inserted by St. 1955, c. 332.  Since 1994 a municipality that accepts the provisions of § 42K may as an alternative use a "uniform unit method."  G. L. c. 40, § 42K, inserted by St. 1994, c. 60, § 66. This method is based on the number of water units, including "potential" units, to be served by the water mains, without regard to the frontage of the land on the way:

> "[T]he water commissioners may assess betterments . . . for the construction and connection of water mains and services by a uniform unit method which shall be based upon the common main construction costs divided among the total number of existing and potential water units to be served . . . .  Each water unit shall be equal to a single family residence.  Potential water units shall be calculated on the basis of zoning in effect at the date of assessment."

G. L. c. 40, § 42K.

Also relevant to this dispute is the subdivision control law, G. L. c. 41, §§ 81K to 81GG.  In a city or town that has accepted the provisions of the law, a person may not "make a subdivision of any land . . . unless he has first submitted to the planning board of such city or town for its approval a plan of such proposed subdivision, showing the lots into which such land is to be divided and the ways already existing or which are to be provided by him for furnishing access to such lots." G. L. c. 41, § 81O, inserted by St. 1953, c. 674, § 7. "Subdivision control . . . has as a major purpose ensuring that the subdivision provides adequate drainage, sewerage, and water facilities, without harmful effect to adjoining land and to the lots in the subdivision."  Meyer v. Planning Bd. of Westport, 29 Mass. App. Ct. 167, 170 (1990).  "A planning board's rules and regulations, adopted under the requirements of G. L. c. 41, § 81Q, address these general purposes by establishing definite standards for streets and utilities."  Beale v. Planning Bd. of Rockland, 423 Mass. 690, 696 (1996).

The statute defines "subdivision" as "the division of a tract of land into two or more lots," but with certain exemptions.  G. L. c. 41, § 81L, as appearing in St. 1956, c. 282.  The exemptions apply "if, at the time [the division of land] is made, every lot within the tract so divided has frontage on

> "(a) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or
>
> "(b) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or
>
> "(c) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon."

G. L. c. 41, § 81L, as amended through St. 1965, c. 61.

If an applicant's plan meets one of these exemptions, the planning board must endorse the plan as one not requiring approval under the subdivision control law. See G. L. c. 41, § 81P. This is known as an "approval not required" or ANR endorsement. See Palitz v. Zoning Bd. of Appeals of Tisbury, 470 Mass. 795, 797 (2015).

2. Factual background.[3] The district is a municipal fire and water district vested with authority to lay water pipes and necessary appurtenances in public or private ways and to recover the costs thereof by assessing betterments on the owners of

---

[3] We summarize the facts from the parties' joint trial stipulation and, where appropriate, draw factual inferences from the joint trial exhibits. See Hickey v. Pathways Assn., Inc., 472 Mass. 735, 743 (2015) (where judge issues decision on case stated basis, appellate court may draw own inferences of fact). We reserve some details for later discussion.

benefited lands.[4]  Until the late 1990's, the district employed a street-frontage method of calculating water betterment assessments.  In 1999, after concerns were raised that the frontage method was not equitable in some circumstances, the voters of the district voted to adopt the provisions of G. L. c. 40, § 42K.

Subsequently, the district implemented a policy governing assessments of large tracts of land that could be subject to multiple betterments.  According to the policy, which is documented in an internal memorandum, the district considers a water unit to be "a single lot which may be served by a single water service line, receive fire protection, or otherwise benefit[] from the water main project."  Large lots are evaluated "for potential future subdivision," and agricultural and vacant land is evaluated "for potential future maximum build out potential according [to] the Wareham Zoning Ordinance." When determining a parcel's development potential, the district follows a series of steps, which include gathering information on the parcel, such as topographic maps, wetlands data, and aerial photographs; notifying the property owner and requesting

---

[4] The board of water commissioners is the governing body of the district and oversees the actions of the district with respect to establishing a water supply, including the assessment of betterments.  We refer to the board and the district collectively as the "district."

further information; "[w]ork[ing] with [the] property owner to establish maximum build out potential"; and "[i]dentify[ing] possible restrictions to maximum build out using available and supplied information."

On various dates in 2006 and 2007, the district gave notice of its intent to construct new water mains in ways abutting or near six undeveloped parcels of land owned by the plaintiff. Only three are at issue on appeal:  Lots 1000, 1004, and 1009. As to each, the district sent the plaintiff letters explaining that it intended to assess betterments based on the buildout potential of the land and requesting an immediate response if the plaintiff had information that the land was not developable. The district also explained that the plaintiff could avoid a given assessment by restricting the parcel from development or merging it with an adjacent one.  The plaintiff did not respond to the letters with any documentation, such as wetlands plans or merger deeds, identifying development restrictions on the land.

In March of 2007, the district recorded an order of assessment of betterment with the Plymouth County registry of deeds.  The assessments reflected the maximum number of subdivision lots that could be created from the plaintiff's property under the subdivision rules.  In particular, the three disputed assessments were as follows:

Lot 1000, which comprises approximately forty-four acres, was assessed as twenty-five units, for a total of $209,816.75.[5] On the date of assessment, it could have been divided into four ANR lots.

Lot 1004, which comprises approximately nineteen acres, was assessed as eleven units, for a total of $92,319.37. On the date of assessment, it was not buildable because it had no street frontage.

Lot 1009, which comprises approximately thirty-eight acres, was assessed as twenty-one units, for a total of $176,204.07. On the date of assessment, it could have been divided into no fewer than nine ANR lots and as many as twelve.

Discussion. 1. Exhaustion of administrative remedies. We begin by noting that the plaintiff does not appear to have followed the appropriate procedure for obtaining review of its claims. Although both the judge and the parties have treated this case as one for declaratory judgment, the proper avenue for relief lies in G. L. c. 80, which "sets out a comprehensive and uniform statutory scheme of administrative appeals and judicial review regarding assessments for . . . betterments." Gudanowski v. Northbridge, 17 Mass. App. Ct. 414, 421 (1984). See G. L.

---

[5] The judge ordered the district to recalculate this assessment after the district conceded that the parcel could yield a maximum of twenty, rather than twenty-five, subdivision lots.

c. 40, § 42I, inserted by St. 1955, c. 332 ("The provisions of chapter eighty relative to the apportionment, division, reassessment, abatement and collection of assessments, and to interest, shall apply to assessments under this chapter"). Under G. L. c. 80, § 7, "[a] person who is aggrieved by the refusal of [a local] board to abate an assessment . . . may within thirty days after notice of the[] decision appeal therefrom . . . in the superior court."  Here, the record contains conflicting evidence whether the plaintiff ever filed a petition for abatement (as opposed to one for extension, which is a different form of relief).[6]

Even were we to assume, as alleged in the complaint, that the plaintiff requested abatement but the district failed to act on its petitions, this action, filed in June of 2010, appears to be untimely.  An abatement petition must be filed within six months of the notice of assessment, see G. L. c. 80, § 5, and, "[i]f the [local] board . . . fails to act upon said petition within four months . . . , the petition shall be deemed to be denied, and the petitioner shall have the right within sixty

---

[6] Extensions of payment are governed by G. L. c. 40, § 42I, which provides that "[t]he water commissioners or other officers in charge of the supply and distribution of water . . . shall, if the order for assessment is upon land not built upon, extend the time of payment of the assessment and interest thereon at the rate of four per cent until it is built upon or for a fixed time; and the assessment and interest shall be paid within three months after such land is built upon or at the expiration of such fixed period."

days after the expiration of said four months to appeal."  G. L. c. 80, § 10A.  Thus, since the only petitions contained in the record are dated mid-November of 2007, it appears that this case should have been brought no later than mid-May of 2008. Nonetheless, because the district has not argued failure to exhaust or untimeliness, or shown that these are nonwaivable jurisdictional defenses, we will reach the merits.

2.  Standard of review.  "Because the judge issued [his] decision on a case stated basis, we review it de novo, drawing our own inferences of fact and reaching our own conclusions of law."  Hickey v. Pathways Assn., Inc., 472 Mass. 735, 743 (2015).  Although the parties appear to agree on this point, neither brief addresses the question of what deference we owe to the district's interpretation of the statute.  We answer the question, which was raised and discussed at oral argument, by turning to settled principles in the case law.

"Local regulations are presumed valid, unless they exceed the authority conferred by the enabling statute or the Home Rule Amendment (art. 89 of the Amendments to the Massachusetts Constitution)."  Springfield Preservation Trust, Inc. v. Springfield Library & Museums Assn., Inc., 447 Mass. 408, 418 (2006).  In determining whether a local regulation is inconsistent with a statute, we give "considerable latitude to municipalities, requiring a sharp conflict between the local and

State provisions" before we hold the regulation invalid. <u>Grace</u> v. <u>Brookline</u>, 379 Mass. 43, 53-54 (1979), quoting from <u>Bloom</u> v. <u>Worcester</u>, 363 Mass. 136, 154 (1973). "That sharp conflict appears when either the legislative intent to preclude local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved in the face of the local by-law." <u>Grace</u>, 379 Mass. at 54. Thus, our inquiry here is whether the plaintiff has met its "heavy" burden of proving the existence of such a conflict between the district's policy and the water betterment assessment statute. <u>Springfield Preservation Trust, Inc</u>., 447 Mass. at 418. See <u>W.R. Grace & Co.-Conn</u>. v. <u>Acton</u>, 62 Mass. App. Ct. 462, 465 (2004) (town by-law adopted under sewer betterment assessment statute was facially valid because it was "not arbitrary or irrational").

We owe even more deference to the district's application of its policy to the plaintiff's property. It is plain that the district has substantial discretion in this respect. See <u>Exeter Realty Corp</u>. v. <u>Bedford</u>, 356 Mass. 399, 404 (1969) (in assessing betterments, town permitted to make "approximations" of owner's proportional part of costs); <u>Henry B. Byors & Sons, Inc</u>. v. <u>Board of Water Commrs. of Northborough</u>, 358 Mass. 354, 358 (1970) (water commissioners have "considerable discretion in determining the methods of fixing prices or rates related to the use of water"); <u>Morton</u> v. <u>Hanover</u>, 43 Mass. App. Ct. 197, 205

(1997) (there need only be "reasonable basis for surcharging the plaintiffs for water service benefits [that] are particularized to them").  We will therefore uphold the assessments unless the plaintiff can show that they are "unreasonable" or impermissibly "discriminatory."  Henry B. Byors & Sons, 358 Mass. at 359.  See Seiler v. Board of Sewer Commrs. of Hingham, 353 Mass. 452, 457 (1968); Exeter Realty, 356 Mass. at 404; Morton, 43 Mass. App. Ct. at 205.

3.  G. L. c. 40, § 42K.  The parties' dispute centers on the meaning of the provision in G. L. c. 40, § 42K, that "[p]otential water units shall be calculated on the basis of zoning in effect at the date of assessment."  Under the plaintiff's interpretation, this provision requires that the district consider only the town of Wareham's zoning by-laws when calculating potential water units.  As a result, the plaintiff argues, the only lots that can be considered potential units are those resulting from divisions of land that qualify for ANR endorsements under the subdivision rules.  The district counters that the Legislature used "zoning" in a broader manner, allowing for consideration of potential development under the subdivision rules.

We accept the underlying premise of the plaintiff's argument that the subdivision rules are not zoning enactments. Generally, "zoning does not include regulations that a

municipality duly adopts under independent statutory authority."

See Healy, Massachusetts Zoning Manual § 2.1, at 2-2 (4th ed.

2007).  See also Lovequist v. Conservation Commn. of Dennis, 379

Mass. 7, 12 (1979) ("We do not consider all ordinances or by-

laws that regulate land use to be zoning laws . . .").

Moreover, our cases have specifically discussed the differences

between zoning and subdivision control, explaining that

subdivision control "does not dictate in the same direct fashion

[as zoning] how land will be used but, rather, compels the

construction of ways which, among other things, are safe and

convenient for travel and make provision for utilities."  Meyer,

29 Mass. App. Ct. at 170.  Accord Collings v. Planning Bd. of

Stow, 79 Mass. App. Ct. 447, 454 (2011).

Nevertheless, we do not read the language "on the basis of

zoning in effect at the date of assessment" to require the

district to base its calculations solely on the zoning by-laws,

as the plaintiff argues.  Rather, we construe the provision as

accomplishing two purposes:  it prohibits a municipality from

assessing a lot as a potential water unit if zoning restrictions

would render the lot not buildable, and it defines the operative

restrictions as the ones in effect at the time of the

assessment.  So construed, the provision requires consideration

of zoning laws in effect at the time of assessment but does not

preclude consideration of other laws relevant to the development

potential of the land.  Thus, if the land can be subdivided, and residences can be built on the resulting lots, we see no bar -- and certainly, no "clear" bar, Grace, 379 Mass. at 54 -- to including those residences as "potential water units" under G. L. c. 40, § 42K.

This result is consistent with the statutory scheme and purpose.  When the Legislature enacted § 42K in 1994, it plainly intended to provide an alternative to the fixed uniform rate method of § 42H, which has been in place since 1955.  This must mean that the uniform unit method of § 42K encompasses factors beyond those already set out in § 42H (frontage of the land on the way in which the water main is to be laid, the land area within a fixed depth from the way, and valuation).  Cf. W.R. Grace & Co.-Conn., 62 Mass. App. Ct. at 463, (uniform unit method under G. L. c. 83, § 15, allows municipalities to consider "existing and potential sewer units to be served," "[r]ather than making assessments based upon frontage and area as required by the fixed uniform rate").[7]

In contrast to § 42H, § 42K expressly authorizes the costs of construction to be assessed on "potential" water units that will be served by the new water mains.  This indicates a

---

[7] The statutory methods of calculating sewer betterment assessments are substantially similar to the methods set out in G. L. c. 40, §§ 42H and 42K.  See G. L. c. 83, § 15.

legislative intent to allow municipalities to consider the development potential of the benefited land when determining how to divide the costs among the affected property owners.  See W.R. Grace & Co.-Conn., 62 Mass. App. Ct. at 464, quoting from Mullen v. Board of Sewer Commrs. of Milton, 280 Mass. 531, 533 (1932) (uniform unit method is exercise of legislative authority "to make an apportionment of the cost of improvements upon . . . estates receiving peculiar advantages above those accruing in general").  Although the division of costs must be proportional, see ibid., we disagree with the plaintiff's contention that the inclusion of subdivision lots violates that principle.  A subdivision lot will receive a particularized benefit from the availability of a nearby public water supply, even if the developer will have to pay to extend the water lines.  See Seiler, 353 Mass. at 457 ("It having been determined that the petitioners derive special benefits from . . . [the new sewer system], they are liable to assessment for a proportional share of the general cost.  There is nothing to compel the respondent to allocate funds so as to put the general burden exclusively on abutters other than on the petitioners").  Furthermore, if only frontage is considered, this can lead to overestimating the proportional benefits conferred to small lots, while underestimating the benefits to large or unusually shaped lots that have little frontage but high development potential.  The

district's inclusion of subdivision lots is thus consistent with the statutory purpose of distributing costs based on the approximate proportional benefit conferred to each property owner. See ibid. ("In view of the difficulty of attempting to estimate benefits to the estates individually, it is necessary only that the principle by which the expenditures are apportioned provide for reasonable and proportional assessments, not substantially in excess of the benefits received"). Accord Exeter Realty, 356 Mass. at 404; Morton, 43 Mass. App. Ct. at 205.

The plaintiff further contends that it is unfair to assess betterments on hypothetical subdivision lots because planning boards have broad discretion to approve or disapprove subdivision plans; as a result, it says, a developer cannot estimate with any degree of certainty how many subdivision lots might ultimately be created out of a parcel. A planning board's discretion is more circumscribed, however. In particular, "[a] planning board has no discretion to disapprove a subdivision plan which has been approved by the board of health and is in conformance with the reasonable rules and regulations of the planning board." MP Corp. v. Planning Bd. of Leominster, 27 Mass. App. Ct. 812, 819-820 (1989), quoting from Patelle v. Planning Bd. of Woburn, 6 Mass. App. Ct. 951, 951 (1978). To reject a proposed subdivision, the planning board must "point to

particular board regulations" that render the plan out of compliance.  Id. at 821.  The applicant can then appeal any disapproval to the Superior Court or the Land Court.  See G. L. c. 41, § 81BB, as amended through St. 2002, c. 393, § 6.

We note also that there are procedural protections built into the district's assessment policy itself.  The policy provides for dialogue between the district and the property owner prior to the district's final determination of the assessment.  Property owners can submit evidence that their land cannot be developed, or they can place a deed restriction on the land.  In the event of disagreement, they can petition for abatement and challenge any adverse decision in Superior Court.  See G. L. c. 80, § 7.  Together, these protections guard against the risk that assessments made under the district's policy will not be reasonable and proportional.

The plaintiff does not explain how its contrary reading of § 42K, which would strictly confine the district to considering only zoning laws, comports with the statute and legislative intent.  "The Zoning Act and the subdivision control law share a similar purpose:  to regulate the use of land to ensure the safety, convenience, and welfare of the inhabitants of municipalities."  McElderry v. Planning Bd. of Nantucket, 431 Mass. 722, 726 (2000).  Both laws bear on the rights of property owners to develop their land.  Indeed, the town of Wareham's

zoning by-laws incorporate the subdivision rules in several places -- for instance, by allowing a developer to submit a combined application for site plan review and subdivision approval, and obtain a combined public hearing, if the application meets the requirements for both approvals. See Town of Wareham Zoning By-laws § 1550 (2016). Given the interrelationship and shared purposes of the two regulatory regimes, we think it unlikely that the Legislature meant for land development potential to be determined under § 42K based on zoning laws alone. Certainly, nothing in § 42K compels that interpretation.

Furthermore, the plaintiff's reading would create the anomaly of allowing water betterments to be assessed on land that is restricted from development by nonzoning regulations, such as those governing earth removal and floodplain and wetlands protection. While "often the subject of zoning regulations, these matters have also been adopted and upheld by the Supreme Judicial Court as independent, nonzoning land use controls." Healy, Massachusetts Zoning Manual § 2.1, at 2-2 to 2-3. See Byrne v. Middleborough, 364 Mass. 331, 334 (1973); Lovequist, 379 Mass. at 12-14. The implication of the plaintiff's position would be that municipalities would be free to ignore such restrictions even if they would render the land

undevelopable, an outcome that the Legislature is not likely to have intended.

The plaintiff's interpretation suffers from the additional flaw that it would create substantial overlap between § 42H and § 42K. The only alternative method of calculation proffered by the plaintiff -- limiting potential water units to ANR lots -- is, in essence, a frontage-based method because whether a lot qualifies for an ANR endorsement depends on frontage, either on a public way or a way endorsed by the planning board as meeting the requirements of the subdivision control law. See G. L. c. 41, § 81L.[8] But the fixed uniform rate method has provided for frontage-based assessments since the original enactment of the water betterment assessment statute in 1955. See G. L. c. 40, § 42H. The plaintiff does not explain what then would have been the Legislature's intent in enacting § 42K if it too is based on frontage. See Doherty v. Planning Bd. of Scituate, 467 Mass. 560, 569 (2014) (statute should be construed so that no part is inoperative or superfluous).

---

[8] We note that, although an ANR endorsement takes a plan outside the regime of the subdivision control law, it "serves merely to permit the plan to be recorded . . . and is not an attestation of compliance with zoning requirements." Palitz, 470 Mass. at 807, quoting from Cornell v. Board of Appeals of Dracut, 453 Mass. 888, 892 (2009). See Gates v. Planning Bd. of Dighton, 48 Mass. App. Ct. 394, 397 (2000) (whether lot "conform[s] with zoning requirements [is] not an appropriate consideration in granting or withholding an ANR endorsement").

For these reasons we conclude that § 42K should be read to allow water betterment assessments to be based on the development potential of the land, which must be determined by considering "zoning in effect at the date of assessment" and may be determined by considering rules and regulations adopted under the subdivision control law.  The district's policy comports with this reading and thus does not conflict with § 42K.

4.  G. L. c. 40, § 42G.  Turning to the plaintiff's next argument, we have little trouble concluding that G. L. c. 40, § 42G, poses no bar to the district's method of calculation. The plaintiff construes § 42G as authorizing water betterments to be assessed only as to "land that is actually given access to a water line, generally by having frontage on the road where the line is installed."  But this interpretation disregards the plain statutory language, which specifies that betterments may be assessed against a property owner whose land "receives benefit from the laying of water pipes in public and private ways upon which his land abuts or which by more remote means receives benefit through the supply of water to his land or buildings" (emphasis supplied).  G. L. c. 40, § 42G.  If, as the plaintiff argues, the statute applies only to land abutting the way, the words "which by more remote means receives benefit" would have no meaning.  We decline to adopt such a construction. See Doherty, 467 Mass. at 569.

5. Fairness of the assessments. Finally, the plaintiff has failed to demonstrate that the three assessments at issue were unreasonable or disproportionate. The plaintiff declined multiple opportunities, prior to the district's recording of the assessments, to submit evidence that the parcels are not developable. As a result, we lack any meaningful record on which to consider its claims that the district's policy is unfair as applied to the parcels.

If anything, what is in the record undermines the plaintiff's claims of unfairness. As reflected in a stipulation between the parties, the plaintiff has subdivided some of the parcels already and has reserved its rights to make further subdivisions while this lawsuit is pending. In contrast, other property owners responded to the district's letters with documentation that their land was not developable because of wetlands regulations, conservation restrictions, or other enforceable limitations on the use of the property.[9] In those cases the district responded by reducing the assessments. Thus, on the evidence before us, there is nothing to indicate that the

_____

[9] We do not preclude the possibility that, in a different case, a landowner could successfully challenge an assessment of subdivision lots on these or other grounds. In any appeal from a denial of abatement, the court would have the power to overturn an assessment that is "unreasonable or unreasonably discriminatory." Morton, 43 Mass. App. Ct. at 205. See Henry B. Byors & Sons, 358 Mass. at 359. No such showing has been made in this case, however.

assessments at issue were unreasonable or substantially in excess of the benefits conferred on the plaintiff.  See <u>Morton</u>, 43 Mass. App. Ct. at 205.

<u>Judgment affirmed</u>.