CITGO PETROLEUM CORPORATION & another[1] vs. PLANNING
BOARD OF BRAINTREE.

Norfolk.   May 8, 1987. — July 3, 1987.

Present: ARMSTRONG, DREBEN, & FINE, JJ.

*Subdivision Control,* Exemption.

An exclusion contained in G. L. c. 41, § 81L, as appearing in St. 1953,
c. 674, § 7, was applicable to a sixty-eight acre tract of land containing
several substantial buildings, all of which were standing when the Sub-
division Control Law took effect in the town where the land is located,
so that the owner, without seeking approval under the Subdivision Con-
trol Law, was entitled to divide the tract into two lots, each with one
or more of the buildings. [426-427]

CIVIL ACTION commenced in the Land Court Department
on June 24, 1986.

The case was heard by *Robert V. Cauchon,* J.

*Douglas A. Randall* for the defendant.

*Julian J. D'Agostine (Judith Ashton* with him) for the plain-
tiffs.

ARMSTRONG, J.   The general revision of the Subdivision
Control Law effected by St. 1953, c. 674, § 7, inserted into
G. L. c. 41, § 81L, which defines "subdivision", a new ex-
clusion: namely, "[T]he division of a tract of land on which
two or more buildings were standing when the subdivision
control law went into effect in the city or town in which the
land lies into separate lots on each of which one of such build-
ings remains standing . . . ." Perhaps the existence of the
exclusion is not widely known; perhaps it is so clear as not to
require interpretation. For whatever reason, we find no reported
case in which the effect of the exclusion has been determined.

---

[1] Clean Harbors of Braintree, Inc., referred to in the text as "Clean
Harbors".

Citgo Petroleum Corporation owns a parcel of some sixty-eight acres of land with several buildings in Braintree. Clean Harbors leased eleven acres of it with buildings for a hazardous waste terminal. In late 1985 or early 1986, Clean Harbors reached an agreement with Citgo to buy the leased property.

Citgo prepared a plan dividing the parcel into two lots, one to be sold and the other to be retained. This Citgo submitted to the planning board for an endorsement, under G. L. c. 41, § 81P, that approval was not required because the plan was not a subdivision. Citgo's contention, undisputed below,[2] was that buildings existing before the Subdivision Control Law went into effect in Braintree were standing on both lots, and thus the plan was not a subdivision under the sentence of § 81L quoted above. The board denied the endorsement. Citgo appealed to the Land Court under G. L. c. 41, § 81BB, as amended through St. 1982, c. 533, § 2, and moved for summary judgment. A judge of that court allowed the motion, ruling that Citgo was entitled to prevail as matter of law. The board has appealed from the ensuing judgment.

As applied to this case, the text of the statutory exclusion is unambiguous, and Citgo falls within it. The exclusion for lots with two or more buildings is distinct from the more commonly used exception, also in § 81L, for plans where every lot has the requisite frontage on a public way or other suitable way as defined in the statute. Thus, the board's argument that the lot to be sold to Clean Harbors lacks adequate frontage misses the point. If plans under the provision in question must also qualify under the frontage exception, then the provision in question is surplusage.

The defendants argue that a literal reading of this exception would completely undercut the purposes of the Subdivision Control Law, as set out in G. L. c. 41, § 81M, by allowing a homeowner to use any detached garage, shed, or other out-

---

[2] The planning board's claim upon appeal, that two affidavits are hearsay, was not raised below, and the grounds raised below for excluding them are not now argued. Thus, neither will be considered. *Thibeault* v. *Massachusetts Elec. Co.*, 2 Mass. App. Ct. 24, 28 (1974). Liacos, Massachusetts Evidence 73 (5th ed. 1981).

building as a basis for unrestricted backland development. There are several replies. First, this language in § 81L is not the result of legislative oversight. The original versions of the Subdivision Control Law, appearing in St. 1936, c. 211, and St. 1947, c. 340, did not contain this exception. It was added, as mentioned above, in the 1953 general revision. The legislative history of the 1953 statute shows that the drafters were quite aware of what they were doing, although it does not explain their reasons.[3] Report of the Special Commission on Planning and Zoning, 1953 House Doc. No. 2249, at 54. Second, just because a lot can be divided under this exception does not mean that the resulting lots will be buildable under the zoning ordinance. *Smalley* v. *Planning Board of Harwich*, 10 Mass. App. Ct. 599, 603 (1980). Third, the lots in this case are being used for distinct, independent business operations, and the preexisting buildings relied upon — the main office, the underwriter's pump house/machine shop, the wax plant building, the earth burner building, and the new yard office — are substantial buildings. A claim that a detached garage or a chicken house or woodshed qualifies under this exception might present a different case. Finally, a building, to qualify under this provision, must have been in existence when the Subdivision Control Law went into effect in the town. It is too late for speculators to buy tracts of back land, cover them with shacks, and divide them into lots accordingly. In short, we see no sufficient reason to refuse application of the plain language of the exclusion in this case.

*Judgment affirmed.*

---

[3] The decision in *Howland* v. *Acting Supt. of Bldgs. & Insp. of Bldgs. of Cambridge*, 328 Mass. 155 (1951), suggests that the board could be correct in hypothesizing that the 1953 provision may have been inserted to deal with lots where a house was built in the back yard of another house, with no street frontage. The statutory language, however, is not nearly so narrow.