NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11678

SUZANNE PALITZ, trustee,[1] vs.  ZONING BOARD OF APPEALS OF
TISBURY & another.[2]

Suffolk.     November 6, 2014. - March 3, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.

Subdivision Control, Zoning requirements, Approval not required.
     Zoning, Nonconforming use or structure, Variance.

Civil action commenced in the Land Court Department on
October 10, 2012.

The case was heard by Karyn F. Scheier, J., on a motion for
summary judgment.

The Supreme Judicial Court granted an application for
direct appellate review.

Daniel P. Dain for the plaintiff.
Jonathan M. Silverstein (Katherine D. Laughman with him)
for the defendants.

The following submitted briefs for amici curiae:

_____

[1] Of the 87 Main Street Nominee Trust.

[2] Building inspector and zoning enforcement officer of
Tisbury.

Gareth I. Orsmond & Jesse W. Abair for Massachusetts Association of Regional Planning Agencies & others.
     Edward J. DeWitt for Association to Preserve Cape Cod.
     Benjamin Fierro, III, for Home Builders and Remodelers Association of Massachusetts, Inc.

CORDY, J.  In this appeal, we must decide whether a division of land pursuant to the subdivision control law's existing structures exemption, G. L. c. 41, § 81L (§ 81L),[3] entitles the structures on the resulting lots to "grandfather" protection against new zoning nonconformities created by the division.  As is more fully set forth herein, the plaintiff is the most recent owner of a lot in the town of Tisbury (town).  The lot was created in 1994 by a division of land pursuant to the existing structures exemption.  On the lot is a structure built before both the subdivision control law and the Zoning Act, St. 1975, c. 808, went into effect.

The plaintiff sought a permit to tear down the existing structure and build a new one, somewhat larger and taller than the existing structure.  The permit was denied on zoning grounds, and the plaintiff appealed to the Land Court.  A judge in the Land Court concluded that the § 81L division created new zoning nonconformities that deprived the plaintiff's dwelling of

---

[3] As defined in G. L. c. 41, § 81L (§ 81L), a "[s]ubdivision" does not include "the division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing."

the grandfather status it might have had under the Zoning Act.
As a result, the plaintiff, who sought to tear down and rebuild
her dwelling approximately ten feet taller, was required to
obtain a variance.

We conclude that an exemption from the subdivision control
law entitles a landowner to an endorsement that planning board
approval is not required for the division of qualifying
properties into separate lots, each with its own structure, but
that such an endorsement has no bearing on each structure's
compliance with zoning bylaws.  See Alley v. Building Inspector
of Danvers, 354 Mass. 6, 7-8 (1968).  In light of the new zoning
nonconformities created by the division of land in this case, a
variance was required -- and, in fact, was previously granted to
the former owner -- to make the plaintiff's current dwelling
lawful.  A variance cannot, however, serve as a launching pad
for the expansion of zoning nonconformities.  See Mendes v.
Board of Appeals of Barnstable, 28 Mass. App. Ct. 527, 531
(1990).  Consequently, we agree with the Land Court judge that,
in order to proceed with her project, which would have
eliminated an abutter's view of Vineyard Haven Harbor, the
plaintiff was required to obtain a new or amended variance.[4]

------

[4] We acknowledge the amicus briefs submitted by the
Association to Preserve Cape Cod; Home Builders and Remodelers
Association of Massachusetts, Inc.; and the Massachusetts
Association of Regional Planning Agencies, Martha's Vineyard

1.  Background.  We summarize the facts relied on by the Land Court judge, supplemented where necessary by the undisputed facts in the record.  See 81 Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 693 (2012).  From 1923 until 1994, the parcels of land now known and numbered as 83, 87, and 89 Main Street in the town were held in common ownership (original tract).  Three single-family residential buildings stood closely clustered on the original tract.  The town adopted a local zoning bylaw in 1959, and the subdivision control law went into effect in 1974.

In 1994, the owner of the original tract, Michael Putziger, sought to divide the land into three lots, such that a single dwelling would stand on each lot, in conformance with the existing structures exemption from the definition of "subdivision" in § 81L.  Putziger submitted a plan to the town's planning board and received an "approval not required" endorsement pursuant to G. L. c. 41, § 81P (§ 81P) (ANR endorsement).  The ANR endorsement stated that it did "not stay enforcement of zoning violations."  The plan depicting the endorsement and the three newly created lots was duly recorded.

The new lot at 87 Main Street, as created by the § 81L plan, did not conform to the town's zoning bylaw regarding

Commission, Massachusetts Association of Planning Directors, Inc., and Massachusetts Chapter of the American Planning Association.

minimum lot size and frontage requirements. The creation of the new lot also rendered the dwelling located thereon nonconforming with respect to its front and southern side yard setbacks. Putziger sought variances from the zoning board of appeals of Tisbury (zoning board) to make the lot and dwelling lawful and, therefore, saleable as such.[5] In 1995, the zoning board granted the variances, finding: "There will be no change in the appearance or use of the buildings on the . . . properties and their relation to adjoining . . . properties. Therefore, desirable relief may be granted without either a substantial detriment to the public good or substantial derogation from the intent or purpose of this by-law" (1995 variance). The variance was recorded, and 87 Main Street was sold soon thereafter.

In 2007, the plaintiff acquired 87 Main Street. In 2012, she sought a building permit to tear down the existing dwelling and construct a new dwelling that, while maintaining the same footprint, would have been approximately ten feet taller and added a bedroom, a third floor, and a full basement. The zoning enforcement officer refused to issue the building permit unless the zoning board amended the 1995 variance. As a result, the

_____

[5] The zoning board of appeals of Tisbury (zoning board) found that the newly created lot at 87 Main Street was undersized by 3,157 square feet and lacked 110 feet of required frontage. The zoning board also found, inter alia, that the structure thereon had a front setback of only four feet, whereas twenty-five feet were required under the zoning bylaw.

plaintiff applied for an amended or new variance, which application was denied, in part, because the increased height of the new dwelling -- in conjunction with the nonconforming front yard setback -- would have eliminated the view of an abutter.[6]

The plaintiff appealed the zoning board's decision to the Land Court and moved for summary judgment. The plaintiff argued that 87 Main Street was entitled to grandfather protection under the Zoning Act, G. L. c. 40A, § 6,[7] because the dwelling predated the town's zoning bylaw and the lot was created pursuant to the existing structures exemption from the subdivision control law. As such, she reasoned that neither the 1995 variance nor an amended variance was necessary to her project. The judge disagreed, holding that the ANR endorsement did not establish

---

[6] In addition to the elimination of the abutter's view, the zoning board found that the plaintiff "did not prove substantial hardship, financial or otherwise, since many of the modifications necessary could be done within the existing dwelling . . . and, further, that with the added bedroom, full basement and additional third floor, the density of the neighborhood will be negatively impacted."

[7] The grandfather protection afforded under the Zoning Act can be found in the first paragraph of G. L. c. 40A, § 6, which provides, in relevant part:

"a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, . . . but shall apply to any change or substantial extension of such use, . . . [and] to any reconstruction, extension or structural change of such structure . . . except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure."

zoning compliance and, as a result, 87 Main Street was not rendered lawful for zoning purposes by the grandfather protection afforded by § 6. Rather, 87 Main Street was rendered lawful by the 1995 variance, and consequently, an amendment to that variance was required for the plaintiff to enlarge her dwelling. Finding that the denial of the amendment was neither arbitrary nor capricious, the judge granted summary judgment in favor of the zoning board. We granted the plaintiff's application for direct appellate review and now affirm the judgment of the Land Court.

2. <u>Discussion</u>. a. <u>Analytical framework</u>. We review de novo a judge's decision granting summary judgment to the zoning board. <u>81 Spooner Road, LLC</u>, 461 Mass. at 699. "Summary judgment is appropriate if there is no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law." <u>Conley</u> v. <u>Massachusetts Bay Transp. Auth</u>., 405 Mass. 168, 173 (1989). "Summary judgment, when appropriate, may be rendered against the moving party." Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and [her] ruling was correct as a matter of law." <u>M.P.M. Bldrs., LLC</u> v. <u>Dwyer</u>, 442 Mass. 87, 89 (2004), quoting <u>Route One Liquors, Inc</u>. v. <u>Secretary of Admin. & Fin</u>., 439 Mass. 111, 115 (2003).

Under the subdivision control law, a person may not subdivide a tract of land unless he or she has first submitted a plan of the proposed subdivision for approval by the town's planning board.  G. L. c. 41, § 81O.  However, planning board approval is not required for certain divisions of land that are specifically exempted from the definition of "subdivision" in § 81L.  See G. L. c. 41, § 81P.  A plan falling within such an exemption is entitled to an ANR endorsement pursuant to § 81P.  See Citgo Petroleum Corp. v. Planning Bd. of Braintree, 24 Mass. App. Ct. 425, 426-427 (1987).

An ANR endorsement allows a plan to be recorded and "creates a 'zoning freeze,' in which the laws applicable to the lot at the time of endorsement remain applicable for a period of three years."  Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 725 n.9 (1996).  An ANR endorsement does not, however, render a lot compliant with zoning laws. Alley, 354 Mass. at 7-8.  A landowner may nonetheless avoid such compliance by obtaining a variance or by seeking grandfather protection for the property under the Zoning Act, G. L. c. 40A, § 6.  Grandfathered structures and uses may be extended or altered without obtaining a variance, so long as "(1) the extensions or changes themselves comply with the ordinance or by-law, and (2) the structures as extended or changed are found to be not substantially more detrimental to the neighborhood

than the preexisting nonconforming structure or structures." Rockwood v. Snow Inn Corp., 409 Mass. 361, 364 (1991).

 b. Grandfather status of 87 Main Street. The plaintiff's lot, 87 Main Street, was created through a division of land pursuant to the existing structures exemption. Prior to that division, the existing structure's northern side yard setback was already nonconforming with the town's zoning bylaw. Because the structure predated the effective date of the bylaw, it appears to have constituted a preexisting nonconforming structure entitled to grandfather status under the Zoning Act.[8] G. L. c. 40A, § 6.

 Although preexisting nonconforming status runs with the land, Derby Refining Co. v. Chelsea, 407 Mass. 703, 708 (1990), the "introduction of a new nonconformity to a pre-existing nonconforming residential structure requires a variance." Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539, 547, 553 (2014). Zoning violations arising from nonconformities may be stayed by the doctrine of merger, "which treats adjacent lots currently in common ownership as a single lot 'for zoning purposes so as to minimize nonconformities.'" Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 261

---

[8] The Land Court judge did not make a determination as to whether the original tract and structures thereon were entitled to grandfather status prior to the § 81L division.  The parties agree that resolution of this issue is not critical to the disposition of the present appeal.

(2003), quoting Preston v. Board of Appeals of Hull, 51 Mass. App. Ct. 236, 238 (2001). However, absent a variance, alienation of one of the nonconforming properties will result in realization of the zoning violations by the new owner. Cf. Carabetta v. Board of Appeals of Truro, 73 Mass. App. Ct. 266, 271 n.10 (2008) (conveyance that "demerged" lots resulted in purchase of illegally nonconforming lot).

The plaintiff notes that, regardless of any alteration to 87 Main Street's lot, the § 81L division (and the additional nonconformities it may have created) did not result in a physical alteration to the preexisting structure thereon. Thus, according to the plaintiff, the preexisting nonconforming status of the structure survived the § 81L division. Under this logic, the 1995 variance was superfluous and the plaintiff should not have been required to amend it as a condition to her reconstruction project. We think that the plaintiff misconceives the relationship between lots, structures, and uses. See Bransford v. Zoning Bd. of Appeals of Edgartown, 444 Mass. 852, 861 (2005) (Greaney, J., concurring) ("Creating a distinction in treatment between a nonconforming structure and a nonconforming lot is one that analytically and practically should not be made. The two concepts are intertwined and separating them would permit a landowner to circumvent valid and useful minimum lot area requirements"); Marblehead v. Deery, 356

Mass. 532, 537 (1969) (setback violation created by subdivision rendered preexisting structure "an unprotected nonconforming use").

Prior to the enactment of the Zoning Act in 1975, we decided Howland v. Acting Supt. of Bldgs. & Inspector of Bldgs. of Cambridge, 328 Mass. 155 (1951).  In that case, the owner of a single tract of land with three dwellings located thereon sought to subdivide the tract into three lots with a dwelling on each.  Id. at 158.  The proposed division would have created new zoning nonconformities as to lot size, frontage, and setback.  The plaintiff contended "that since his land and buildings existed in their present physical condition before any zoning ordinance had been enacted, he [was] entitled to dispose of his property as he [saw] fit free from the limitations of the zoning ordinance."[9]  Id. at 159.  We disagreed, concluding that the "proposed division of the plaintiff's lot into three separate lots owned by different persons would change the use of his land to a different use which would be contrary to the ordinance and beyond the protection of the previously existing use."  Id.

---

[9] The local zoning ordinance included the following exception for existing buildings:  "This ordinance shall not apply to existing buildings or structures, nor to the existing use of any building or structure, or of land to the extent to which it is used at the time of adoption of this ordinance, but it shall apply to any change of use thereof."  Howland v. Acting Supt. of Bldgs. and Inspector of Bldgs. of Cambridge, 328 Mass. 155, 159 (1951).

Accordingly, we held that, absent a variance, the plaintiff did not have "the right to make what is really a change of use of his land under the shelter of nonconformity existing when the ordinance was enacted." Id. at 160.

The Howland case is consistent with our subsequent interpretation of the Zoning Act's grandfather provision in Rockwood, 409 Mass. at 364. In the Rockwood case, we explained that, "in the absence of a variance, any extension or structural change of a nonconforming structure must comply with the applicable zoning ordinance or by-law." Id. In other words, a new nonconformity is not entitled to grandfather protection under the Zoning Act. Thus, even under the Zoning Act, the new nonconformities created by the division of land in the Howland case would have required a variance. See id. See also Deadrick, 85 Mass. App. Ct. at 547.

In this case, the § 81L division created new zoning nonconformities as to lot size, frontage, and front yard setback, among others. Because the Zoning Act only permits changes to grandfathered structures if the "changes themselves comply with the ordinance or by-law," the Zoning Act did not render those new nonconformities lawful. Rockwood, 409 Mass. at 364. Thus, contrary to the plaintiff's position, firmly entrenched principles of zoning law compel the conclusion that the 1995 variance was necessary to render the new

nonconformities lawful.  See id.  See also Howland, 328 Mass. at 160; Deadrick, 85 Mass. App. Ct. at 547.

The plaintiff's reliance on Barron Chevrolet, Inc. v. Danvers, 419 Mass. 404 (1995), is misplaced.  In that case, an automobile dealership obtained setback variances for the location of signs on its lot.  "The variances did not address, and were not conditioned on, the content or any other feature or quality of the signs."  Id. at 408-409.  A subsequent zoning change rendered the content and size of the signs nonconforming. When the dealership sought to replace the panels of its signs, the town insisted it obtain amended variances.  We held that the town was in error, because the proposed replacements had no bearing on the variance.  Id. at 408.  Rather, the replacements related to -- but did not expand -- the nonconformities made lawful by the signs' grandfather status.  Id. at 409-410.

In contrast, here, the plaintiff's proposed reconstructed dwelling would not have affected the northern side yard setback nonconformity of 87 Main Street, which preexisted the § 81L division.  Rather, it would have expanded the nonconformities created by the § 81L division, which were made lawful by the 1995 variance.[10]  See Bransford, 444 Mass. at 861 (lawful

---

[10] It is of no consequence that the increased height would have been within the maximum height allowed for residential structures.  The increase in height was objectionable because,

increase in size of structure expanded lot size nonconformity). "It would be anomalous if a variance, by its nature sparingly granted, functioned as a launching pad for expansion as a nonconforming use"[11] (footnote omitted). Mendes, 28 Mass. App. Ct. at 531. Because the proposed reconstruction in this case would have expanded nonconformities permitted by variance, the plaintiff was required to obtain a new or amended variance to proceed with her project.

c. Zoning effect of the existing structures exemption. The plaintiff contends that, even if new nonconformities created by a division of land could deprive a structure of grandfather protection under the Zoning Act, new nonconformities created pursuant to the subdivision control law's existing structures exemption should be ignored for zoning purposes. We analyze § 81L exemptions "in light of the over-all purpose of the subdivision control law." Corcoran v. Planning Bd. of Sudbury, 406 Mass. 248, 250 (1989). "[W]e have emphasized repeatedly that a principal object of the law is to ensure efficient vehicular access to each lot in a subdivision, for safety, convenience, and welfare depend critically on that factor."

---

inter alia, it would have expanded the front yard setback nonconformity by blocking the view of an abutter.

[11] This concern is particularly acute here, as, in further contrast to the case of Barron Chevrolet, Inc. v. Danvers, 419 Mass. 404 (1995), the grant of the 1995 variance was based, in part, on the building not being altered.

Gifford v. Planning Bd. of Nantucket, 376 Mass. 801, 807 (1978).

See Daley Constr. Co. v. Planning Bd. of Randolph, 340 Mass.

149, 153-154 (1959) (reviewing legislative history). See also

G. L. c. 41, § 81M (legislative purpose statement).

Accordingly, "[w]here our statute relieves certain divisions of

land of regulation and approval by a planning board ('approval .

. . not required'), it is because the vital access is reasonably

guaranteed in another manner." Gifford, 376 Mass. at 807.

In Gifford, supra, we considered a challenge to an ANR

endorsement granted pursuant to the subdivision control law's

frontage-based exemption, for a plan dividing a forty-nine acre

parcel into lots.[12] We reasoned that, ordinarily, "lots having

---

[12] The frontage exemption from the definition of "subdivision" provides, in relevant part:

"the division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the meaning of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on (a) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or (b) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (c) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon."

G. L. c. 41, § 81L.

[sufficient] frontage are fully accessible, and as the developer does not contemplate the construction of additional access routes, there is no need for supervision by the planning board on that score." Id. Nonetheless, we affirmed the judgment annulling the ANR endorsement because, despite technically sufficient frontage for each proposed lot on the parcel, the lots were laid out in such a way as to prevent sufficient access to each of them. Id. at 808-809. The Gifford case teaches that the effect of an § 81L exemption is circumscribed by its underlying purpose. See Corcoran, 406 Mass. at 251 (guiding principle of Gifford case is that planning board may withhold ANR endorsement where access implied by frontage is illusory).

The plaintiff contends, without citation, that the existing structures exemption contemplates the "traditional New England family compound." The legislative history of § 81L does not draw distinctions in purpose between the frontage-based exemption and the existing structures exemption.[13] See Report of

---

[13] The creation of exemptions from "subdivision" under § 81L and "approval not required" (ANR) endorsements under G. L. c. 41, § 81P (§ 81P), were among the many revisions made to the subdivision control law in 1953 as result of the Report of the Special Commission on Planning and Zoning, 1953 House Doc. No. 2249. See Daley Constr. Co. v. Planning Bd. of Randolph, 340 Mass. 149, 153-154 (1959). The report explained the interaction of exemptions and ANR endorsements as follows:

"it seemed best to require the person who intends to record such a plan and who contends that it is not a 'subdivision' within the meaning of the law, because all of the ways

the Special Commission on Planning and Zoning, 1953 House Doc. No. 2249, at 10-12, 54-55.  Nonetheless, the plaintiff's hypothesis is consistent with the presumption of access underlying § 81L exemptions generally.  It would have been reasonable for the Legislature to presume that family compounds were built to ensure vital access from the road to each dwelling located on the lot, thereby eliminating the need for planning board supervision.  Cf. Gifford, 376 Mass. at 807.  This would explain why plans depicting such structures are entitled to ANR endorsements, but it would not explain why a landowner should be entitled to carve up the land without any regard to zoning bylaws -- particularly in light of the long-standing principle that "a landowner will not be permitted to create a dimensional nonconformity if he could have used his adjoining land to avoid or diminish the nonconformity."  Planning Bd. of Norwell v.

---

shown on the plan are already existing ways, to submit it to the planning board, and if the board agrees with his contention, it can endorse on the plan a statement that approval is not required, and the plan can be recorded without much more ado" (emphasis supplied).

1953 House Doc. No. 2249, at 54-55.  This explanation suggests that each of the § 81L exemptions sprang from the same reasoning: that where the law's underlying purpose of access is presumably met, planning board oversight is unnecessary.  This was not intended to effect a sea change in the scope of subdivision controls.  Rather, it was intended to clarify the boundaries of planning board oversight and avoid confusion among conveyancers as to whether the subdivision control law was applicable and, if so, whether it had been followed.  Id. at 10-12, 54-55.

Serena, 27 Mass. App. Ct. 689, 690 (1989), S.C., 406 Mass. 1008 (1990) (collecting cases).

Although land divided pursuant to the existing structures exemption is likely done with the goal of alienating the divided lots, the same may be said of nearly all divisions of land, including divisions pursuant to the frontage-based exemption found in § 81L.  In Arrigo v. Planning Bd. of Franklin, 12 Mass. App. Ct. 802, 807-808 (1981), the Appeals Court held that although a planning board may waive the specific requirements of § 81L's frontage-based exemption, see G. L. c. 41, § 81R, that waiver is only valid to the extent that zoning compliance is required to qualify for an ANR endorsement.  A planning board has no authority to "preclude a building inspector or board of appeals from performing their statutory duties of requiring adherence to the town's zoning by-law."  Id.

The Appeals Court's analysis in the Arrigo case is in accord with the legislative history of the subdivision control law.  One of the reasons for the 1953 revisions was that

> "[i]t [was not] sufficiently clear that the application of the law [was] limited to regulating the design and construction of ways in subdivisions, and some well-intentioned but overzealous planning boards ha[d] attempted to use their power of approving or disapproving plans of proposed subdivisions to enforce conditions doubtless intended for the good of the public, but not relating to the design and construction of ways within subdivisions; and it [was] said that some town counsels ha[d] approved this usurpation of power."

1953 House Doc. No. 2249, at 10. The drafters were clearly concerned that the subdivision control law might be manipulated to encroach on other land use authorities. Consistent with these concerns, the Arrigo court explained that landowners "seeking to make two building lots from a parcel lacking adequate frontage . . . are required to obtain two independent approvals: one from the planning board, which may in its discretion waive the frontage requirement under the criteria for waiver set out in G. L. c. 41, § 81R, and one from the board of appeals, which may vary the frontage requirement only under the highly restrictive criteria of G. L. c. 40A, § 10."[14] Arrigo, 12 Mass. App. Ct. at 808.

This dual approval requirement protects zoning bylaws as a distinct regulatory regime independent from subdivision rules and regulations. See Beale v. Planning Bd. of Rockland, 423 Mass. 690, 697 & n.10 (1996). The independence of these two

---

[14] General Laws c. 40A, § 10, provides that the grant of a variance shall be premised on a specific finding that

> "owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law."

regimes "is acknowledged, not only in G.L. c. 41, § 81M, but also implicitly in § 81Q, which restricts subdivision rules and regulations that might address matters within the scope of zoning regulations." Id. at 697. In consequence, we have cautioned that landowners "are deemed to be on notice of zoning requirements, and are governed by them, without any need for independent reference to the requirements in the subdivision rules and regulations" (emphasis supplied). Id.

The notion, therefore, that a division of land would bestow immunity from zoning compliance simply because it was exempted from planning board oversight strikes us as abrasive to the independent character of these regulatory regimes. See Alley, 354 Mass. at 7-8; 1953 House Doc. No. 2249, at 11-12 ("The purpose of the bill as now drawn [is] . . . [t]o clarify the language of the act, especially in some particulars where overzealous city planners have attempted to extend their authority to an extent greater than was intended by the framers of the law"). Indeed, when the Legislature has sought to modify zoning requirements as a result of the subdivision control law, it has done so explicitly. Compare G. L. c. 40A, § 6 (zoning freeze for ANR plans), with G. L. c. 41, § 81Q ("Except in so far as it may require compliance with the requirements of existing zoning ordinances or by-laws, no rule or regulation shall relate to the size, shape, width, frontage or use of lots

within a subdivision, or to the buildings which may be constructed thereon . . .").

Notably, the Zoning Act's grandfather provision incorporates neither § 81L nor § 81P of the subdivision control law. Yet, under the plaintiff's proposed rule, an ANR endorsement pursuant to the existing structures exemption would be tantamount to the grant of a variance. Such a result is contrary to established precedent. See Alley, 354 Mass. at 7-8 (planning board endorsement under § 81P gave lot no standing under zoning bylaw); Citgo Petroleum Corp., 24 Mass. App. Ct. at 427 ("just because a lot can be divided under [the existing structures] exception does not mean that the resulting lots will be buildable under the zoning ordinance"); Arrigo, 12 Mass. App. Ct. at 807 ("It does not follow that the planning board is authorized . . . to grant a variance").

We are persuaded that, unless otherwise provided in the Zoning Act, the consequences of an § 81L division should be confined to the regulatory regime of the subdivision control law. Under that regime, an § 81L division qualifies a plan for an ANR endorsement. See Citgo Petroleum Corp., 24 Mass. App. Ct. at 427. We have explained that an "ANR indorsement serves merely to permit the plan to be recorded . . . and is not an attestation of compliance with zoning requirements." Cornell v. Board of Appeals of Dracut, 453 Mass. 888, 892 (2009). It

follows, then, that the mere fact that the new nonconformities in this case arose pursuant to an § 81L division did not mean that those nonconformities were entitled to grandfather protection under the Zoning Act or otherwise were excused from complying with the town's zoning bylaw.  See Citgo Petroleum Corp., 24 Mass. App. Ct. at 427.  As in Arrigo, 12 Mass. App. Ct. at 808, the owner of the original tract was required to obtain two independent assents to his project:  an ANR endorsement from the planning board and a variance from the zoning board.

This interpretation does not render the existing structures exemption meaningless.  Qualification for the exemption entitles a landowner to an ANR endorsement and a concomitant three-year zoning freeze.  See Marashlian, 421 Mass. at 725 n.9.  See also G. L. c. 40A, § 6.  Moreover, the recording of a plan with zoning violations "may be preliminary to an attempt to obtain a variance, or to buy abutting land which would bring the lot into compliance, or even to sell the nonconforming lot to an abutter and in that way bring it into compliance."  Smalley v. Planning Bd. of Harwich, 10 Mass. App. Ct. 599, 604 (1980).  Although the plaintiff casts such variances as "usually unobtainable," she enjoys the benefit of one in this very case.

As explained by the Land Court judge, the new nonconformities arising from the creation of 87 Main Street were

rendered lawful by the 1995 variance -- not by the subdivision control law's existing structures exemption or the Zoning Act's grandfather provision.  The proposed reconstruction of the dwelling thereon would have expanded those nonconformities and, consequently, required a new or amended variance from the town's zoning bylaw.  See Mendes, 28 Mass. App. Ct. at 531-532 ("In view of the different approaches to the grant of a variance and a special permit, the former grudging and restricted, the latter anticipated and flexible, we do not think the Legislature intended in G. L. c. 40A, § 6, to authorize the expansion of uses having their genesis in a variance pursuant to the more generous standard applicable to a special permit" [footnote omitted]).  See also Rockwood, 409 Mass. at 364; Deadrick, 85 Mass. App. Ct. at 547.  Because the plaintiff does not appeal the grounds on which that variance was denied, we need not go further.

Judgment affirmed.