NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-723                                        Appeals Court

RICHARD G. BARRY & another[1]  vs.  PLANNING BOARD OF BELCHERTOWN
                        & another.[2]

No. 18-P-723.

Hampshire.     March 1, 2019. - October 29, 2019.

Present:  Maldonado, McDonough, & Englander, JJ.

Subdivision Control, Access ways, Approval not required.  Way,
     Public:  subdivision control, Public:  what constitutes.
     Collateral Estoppel.  Judgment, Preclusive effect.

Civil action commenced in the Superior Court Department on
March 13, 2015.

The case was heard by John S. Ferrara, J., on motions for
summary judgment.

Katherine D. Laughman for the defendants.
Ryan K. O'Hara for the plaintiffs.
Michael Pill, for W.D. Cowls, Inc., amicus curiae,
submitted a brief.

_____

    [1] Marcel A. Nunes.

    [2] Town of Belchertown.

ENGLANDER, J.  This case requires us to examine the law regarding so-called "approval not required" (ANR) plans for the division of real estate pursuant to the subdivision control law, G. L. c. 41, §§ 81L and 81P.  In particular, we consider whether a 1987 judgment involving the same Belchertown (town) way at issue in this case is entitled to collateral estoppel[3] effect offensively, against the town, in connection with a new ANR plan filed for different property by different applicants, almost thirty years later.  The motion judge concluded that the 1987 judgment had established that the way -- Munsell Street -- was a "public way," and that, accordingly, the plaintiffs were entitled to ANR approval of their proposed plan, which sought approval for two lots with frontage on Munsell Street.  We vacate the judgment, because neither the 1987 judgment nor the evidence of record establish that the portion of Munsell Street at issue is a public way, and because the 1987 judgment -- which required the ANR endorsement of a plan abutting a different portion of Munsell Street -- is not entitled to preclusive effect in this case.

Background.  We recite the undisputed facts from the parties' summary judgment materials and the exhibits attached

---

[3] We use the term "collateral estoppel" interchangeably with the term "issue preclusion," which is used in the Restatement (Second) of Judgments §§ 27-29 (1982).  We mean no distinction between the two terms.

thereto. Munsell Street has existed on the ground since at least the 1800s, although the condition of the way has varied through the years, and Munsell Street's condition currently varies greatly along its length. The street runs westerly, from its beginning at an intersection with Gold Street. In 1990, the town formally accepted the first 2,730 feet of Munsell Street as a public way. Munsell Street is improved up to a point just short of the end of that acceptance. Beyond that point the road becomes a gravel road, which "dwindles" as one moves further west. The motion judge stated that "[t]here is no question that, at some point, Munsell Street becomes impassable to most vehicles, after which it is no more than a remote trail that may meet up with an old path in neighboring Pelham."

This case involves the portion of Munsell Street beyond the termination point of the formal acceptance. On January 23, 2015, Richard G. Barry[4] (applicant) filed with the planning board of Belchertown (board) an application seeking an ANR endorsement pursuant to G. L. c. 41, § 81P. The accompanying plan showed two lots, lots A and B, each with 140 feet of frontage on Munsell Street.[5] Lot A fronts on the accepted portion of Munsell

---

[4] The application reflects that Barry is the applicant, and that the owner of the locus is Marcel A. Nunes.

[5] The application refers to the locus as fronting Munsell Road but the accompanying plan, the judge, and most other references refer to the way as Munsell Street.

Street.  Lot B does not; its eastern boundary coincides with the end of the accepted way, so that the entirety of lot B fronts on a portion of Munsell Street that has not been formally accepted.

The board denied the application on the ground that the portion of Munsell Street fronting lot B did not meet the criteria for frontage contained in G. L. c. 41, § 81L.  The board further concluded that lot B included land, specifically the portion of Munsell Street that fronts lot B, that had been required to be dedicated to open space as a condition of approval of the neighboring Oasis Drive subdivision.  The board's decision also incorporated the opinion of town counsel noting that the portion of Munsell Street fronting lot B "is simply an old dirt/gravel path that is rutted and only passable by four-wheel drive vehicles," and "[t]he Planning Board would therefore be justified in determining that the way does not contain adequate width grade or construction to provide access for new residential development."

On cross motions for summary judgment, a Superior Court judge granted summary judgment to the applicant.  The judge reasoned that the 1987 judgment of the Superior Court established that Munsell Street is a public way and, applying principles of issue preclusion, ordered the board to endorse the plan as "Approval under Subdivision Control Law not required." The judge also concluded that because Munsell Street was a

public way, it could not have been transformed into "open space" by a condition imposed during subdivision approval. The judge accordingly ordered the entry of a declaratory judgment that the full length of Munsell Street is a public way. The town appeals.

Discussion. The focus of the applicant's summary judgment motion was not that Munsell Street in front of lot B actually meets the § 81L criteria for adequate frontage, but rather that the board is collaterally estopped from denying that Munsell Street meets the criteria of § 81L. The principal question before us, therefore, is whether the 1987 judgment precludes the town from refusing to grant ANR approval for lots fronting on the applicable portion of Munsell Street. Before diving into the details of the 1987 litigation, and the other relevant history of property development along Munsell Street, it will be helpful to have the legal framework in mind.[6]

A. Legal principles applicable to ANR endorsements. A principal purpose of the subdivision control law is to ensure that all newly created lots have adequate access "by ways that

---

[6] We review the motion judge's decision on summary judgment de novo. Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018). Where, as here, both parties have moved for summary judgment, we view the evidence in the light most favorable to the party against whom judgment has entered, to determine whether all material facts have been established and the prevailing party is entitled to judgment as a matter of law. Id.

will be safe and convenient for travel," G. L. c. 41, § 81M, because residents' "safety, convenience, and welfare depend critically on that factor." Palitz v. Zoning Bd. of Appeals of Tisbury, 470 Mass. 795, 803 (2015), quoting Gifford v. Planning Bd. of Nantucket, 376 Mass. 801, 807 (1978). To that end, c. 41 requires that any plan showing a "subdivision" of property must be approved by the local planning board. G. L. c. 41, §§ 81L, 81O. A plan does not require planning board approval, however, if it does not show a "subdivision"; in that event the plan is entitled to an endorsement "approval under the subdivision control law not required," frequently referred to as an "ANR" endorsement. G. L. c. 41, § 81P. See Ninety Six, LLC v. Wareham Fire Dist., 92 Mass. App. Ct. 750, 753 (2018). See also Palitz, supra at 796.

The statutory term "subdivision" is defined in § 81L in the negative -- by setting forth what is not a subdivision. Under § 81L, a plan does not show a "subdivision" if after division, every proposed lot (1) has the required frontage (2) on a way that meets any one of three criteria, each of which is relevant to our analysis herein: (a) the way is "a public way" or "a way which the [town clerk] certifies is maintained and used as a public way" (clause a); or (b) the way is "shown on a plan theretofore approved and endorsed in accordance with the subdivision control law" (clause b); or (c) the way was "in

existence when the subdivision control law became effective
. . . having, in the opinion of the planning board, sufficient
width, suitable grades and adequate construction to provide for
the needs of vehicular traffic . . . and for the installation of
municipal services to serve such land and the buildings . . .
thereon" (clause c).  G. L. c. 41, § 81L.  We have said before
that "[w]here our statute relieves certain divisions of land of
regulation and approval by a planning board ('approval . . . not
required'), it is because the vital access is reasonably
guaranteed in another manner."  Palitz, 470 Mass. at 803,
quoting Gifford, 376 Mass. at 807.

As indicated, the decision at issue was based upon the
judge's conclusion that Munsell Street was previously
adjudicated to be a public way, and thus satisfied clause a of
§ 81L.  There are specific legal criteria for establishing a
"public way," however, as not every way open to the public is a
"public way."  W.D. Cowls, Inc. v. Woicekoski, 7 Mass. App. Ct.
18, 19 (1979) ("[T]here can be private ways, which are defined
ways for travel, not laid out by public authority or dedicated
to public use, that are wholly the subject of private ownership,
which are open to public use . . . " [quotations and citation
omitted]).  Under our cases there are three means by which a way
may qualify as a public way:  "(1) a laying out by public
authority in the manner prescribed by statute . . . ; (2)

prescription; and (3) prior to 1846, a dedication by the owner to public use . . . coupled with . . . acceptance by the public."  Moncy v. Planning Bd. of Scituate, 50 Mass. App. Ct. 715, 716 (2001), quoting Fenn v. Middleborough, 7 Mass. App. Ct. 80, 83-84 (1979).  "If a road has never been dedicated and accepted, laid out by public authority, or established by prescription, such a road is private."  W.D. Cowls, Inc., supra.

B.   The Pharmer litigation and development on Munsell Street.  It is not disputed that the portion of Munsell Street beginning at Gold Road and ending at the westerly end of lot A is a public way, lawfully accepted by the town in 1990.  The portion beyond lot A (including the frontage for lot B), however, was not formally accepted in 1990, and stands on different footing.  The applicants contended below that the board is bound by factual and legal issues decided in Pharmer vs. Belchertown, Superior Ct., No. 82-098 (July 21, 1987), and is estopped from denying that Munsell Street satisfies the requirements of § 81L.  The applicant also points to a 1975 Land Court confirmation proceeding (without registration) wherein the confirmed plan identified Munsell Street as a public way.  For its part, the town contends that issue preclusion is inappropriate, at least in part based upon changed circumstances arising from the 2007 Oasis Drive subdivision approval -- because the Oasis Drive approval was conditioned upon the

portion of Munsell Street west of the accepted way (including the portion fronting lot B) being incorporated into that subdivision's open space. We briefly summarize the 1987 Pharmer litigation, the 1975 Land Court proceeding, and the Oasis Drive subdivision history.

1. The 1987 Pharmer litigation. In 1982, William Pharmer, III, sought ANR approval for property he owned on the south side of Munsell Street, well west of the portion that in 1990 was accepted by the town. At that time Pharmer also owned the locus at issue in the instant litigation, as well as other property in the area. The board declined to grant ANR approval, on the ground that Munsell Street did not meet the requirements of G. L. c. 41, § 81L. Pharmer's appeal to the Superior Court was referred to a special master, who held hearings and issued findings of fact. The special master's findings noted that the board previously had approved several ANR plans for property fronting on Munsell Street. He also noted that Munsell Street was identified as "public" on a plan confirmed in the Land Court in 1975 and recorded in the Hampshire County Registry of Deeds. Based upon these prior plans, the special master concluded that "Munsell Street is a way shown on plans heretofore approved and endorsed by the planning board in accordance with the town's subdivision control law." In other words, the special master concluded

that Munsell Street qualified under clause b of the definition of "subdivision" set forth in c. 41, § 81L. Although the special master made some findings that related to whether Munsell Street was a public way, the decision did not conclude that Munsell Street was a public way.

The special master recommended that the court order the ANR endorsement. A judge of the Superior Court confirmed the special master's decision. The Town initiated but did not complete an appeal from that judgment.[7]

2. The 1975 registered plan. As noted, the special master also found that in 1975, the then owner of the property at issue in Pharmer had filed a petition in the Land Court for confirmation of the title and boundaries of his land. The plan accompanying the 1975 petition identified Munsell Street as a public way. The title and boundaries were confirmed in the Land Court and the plan was recorded on February 22, 1980. The parties agree that the town had notice of that proceeding but did not participate in it.

3. Oasis Drive subdivision. In 2007, the board approved a subdivision plan for Oasis Drive, which plan showed seventeen lots on a cul-de-sac to be created off of the south side of the portion of Munsell Street that had been accepted

---

[7] Although the plan received an ANR endorsement, the subdivision was not developed.

by the town in 1990.  Much of the abutting property was then owned or controlled by the Oasis Drive applicant, Peter S. Galuszka.  As a condition for approval, the board required that the Oasis Drive applicant revise the boundaries on the plan to include within the subdivision's dedicated open space "the entire discontinued right-of-way of Munsell Street," while "granting rights-of-way to W.D. Cowls, Inc. and other property owners to the [w]est of the end of Munsell Street."[8] The area designated as "open space" includes the portion of Munsell Street that fronts on lot B of the plan at issue.

C.  Applicability of collateral estoppel.  Turning to the facts at bar, our review of the Pharmer findings reveals that the special master did not conclude that Munsell Street is a public way.  Rather, the special master concluded that Munsell Street "is a way shown on plans heretofore approved and endorsed by the planning board," thereby satisfying clause b of § 81L, not clause a.  Moreover, the record does not reflect that Munsell Street west of the portion accepted in 1990 actually qualifies as a public way; there was no evidence that the western portion (1) was ever laid out by a public authority in a

_____

[8] Although the planning board's condition used the term "discontinued" to describe this portion of Munsell Street, there is no evidence of any formal discontinuance of a public way by the town.  As noted infra, there is no evidence of acceptance of this portion as a public way, either.

manner prescribed by statute, or (2) prior to 1846, was dedicated by its owner to public use where that dedication was accepted by the public.[9]  See Moncy, 50 Mass. App. Ct. at 716. The applicant makes no argument to the contrary and, in fact, conceded at oral argument that the judge's rationale for concluding that Munsell Street is a public way was faulty.

While the applicant failed to show that Munsell Street is a public way, the question remains whether the finding in Pharmer that Munsell Street is a way shown on an approved subdivision plan under § 81L clause b is entitled to collateral estoppel effect in this case.  At the outset, we note that the conclusion in Pharmer was incorrect:  Munsell Street did not qualify under clause b as a way "theretofore approved . . . [under] the subdivision control law."  G. L. c. 41, § 81L.  While Munsell Street had supplied the frontage for previously approved ANR plans, an ANR endorsement "is not regarded as an 'approval' as that term is used in the Subdivision Control Law."  Cassani v. Planning Bd. of Hull, 1 Mass. App. Ct. 451, 454 (1973).  This is because by definition an ANR plan is not an approved subdivision plan; to the contrary, planning board "approval" is "not required" for such plans.  Rather, to qualify as an "approved"

_____

    [9] On appeal the applicant argues, for the first time, that the special master's findings compel the conclusion that Munsell Street has become a public way by prescription.  As we explain infra, the record does not justify such a conclusion.

way under § 81L clause b the way must have been actually approved by the planning board, after review of the plan under the subdivision control law.  Here there is no contention that the width, grades, and construction of the portion of Munsell Street at issue had ever been actually reviewed and approved by the board.

The fact that the judge's conclusion was wrong in 1987, however, does not mean that it cannot give rise to collateral estoppel.  One of the foundations of collateral estoppel is the desire for finality, to prevent what otherwise could be unfair and costly relitigation of issues already decided.  Accordingly, issue preclusion generally applies even to facts or rights that may have been determined in error.  Fidler v. E.M. Parker Co., 394 Mass. 534, 543-544 (1985).[10]  We nevertheless conclude that in the circumstances here, issue preclusion does not apply.

Under the common formulation of collateral estoppel, a party is precluded from relitigating an issue adjudicated in a prior proceeding where "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior

_____

[10] A contrary conclusion -- allowing a party to contest collateral estoppel by arguing that the earlier judgment was in error -- would be fundamentally at odds with the doctrine.

adjudication was identical to the issue in the current adjudication." Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998). "Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment." Id. at 134-135.

Here the plaintiffs seek to employ collateral estoppel offensively, to preclude the town from asserting a defense even though the plaintiffs were not parties to the 1987 litigation. "'[T]he offensive use of collateral estoppel is a generally accepted practice in American courts,' . . . and occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party." Pierce v. Morrison Mahoney LLP, 452 Mass. 718, 730 (2008), quoting Bar Counsel v. Board of Bar Overseers, 420 Mass. 6, 9 (1995). While offensive collateral estoppel is a "generally accepted practice," the court in Pierce stated that courts should perform a careful evaluation of the circumstances of the prior litigation before invoking the doctrine, to ensure that it is being fairly applied in the circumstances. Pierce, supra. Courts accordingly have "wide discretion" in determining whether the application of offensive collateral estoppel "would be fair to the defendant." Id. at 731, quoting Bar Counsel, supra at 11. See also

<u>Bellermann</u> v. <u>Fitchburg Gas & Elec. Light Co.</u>, 470 Mass. 43, 61-62 (2014).

The town should not be precluded here.  Although there was a final judgment against the town in 1987, the issue in this case is not identical to the issue that was resolved against the town in 1987, because the material facts have changed since that decision.  In 1987, the court determined in the Pharmer litigation (albeit incorrectly) that Munsell Street west of the locus constituted a way shown on an approved subdivision plan, thereby satisfying § 81L clause b.  But three years later, in 1990, the town accepted only a portion of Munsell Street, not including the frontage on lot B, as a public way.  That same year the planning board approved a new subdivision plan involving Munsell Street -- the Oasis Drive subdivision, which incorporated the portion of Munsell Street fronting lot B.  The 1990 approved subdivision plan explicitly changed the land use of the portion of Munsell Street fronting lot B; it was designated as "open space."[11]

---

[11] We recognize that the open space designation was subject to the rights of abutters to the west to access their properties via Munsell Street.  Nevertheless, the 1990 open space designation is a new fact -- a condition on an approved subdivision plan -- that would be material to any subsequent ANR application seeking to employ that portion of Munsell Street as frontage.

It is well established that a previously adjudicated issue is not "identical" for purposes of collateral estoppel, where the facts material to the subsequent litigation have changed since the prior adjudication. See Restatement (Second) of Judgments § 27 comment c (1982) (showing of "changed circumstances" can prevent application of collateral estoppel). That is the case here. Even accepting that the 1987 determination as to clause b's applicability to Munsell Street could be entitled to preclusive effect in this litigation, the "approved" subdivision plans for Munsell Street that existed as of the time of the applicant's present application are materially different than those that existed (if any) in 1987. See G. L. c. 41, § 81L. The factual differences render collateral estoppel inappropriate.[12]

The decision in Goldman v. Planning Bd. of Burlington, 347 Mass. 320, 324 (1964), is instructive. In that case, the applicant argued that because the board had previously granted an ANR endorsement for a property on a particular way, a later filed plan showing the same lots on the same way must be granted an ANR endorsement. Id. The way was not a public way. The Supreme Judicial Court held that "[w]hatever the plaintiff's

_____

[12] Because Munsell Street was never actually reviewed and approved by the board, the applicant's contention that the town failed to follow the procedures to modify an approved plan under G. L. c. 41, § 81W, is unavailing.

rights under [the first plan], they do not include the right to require that the new plan be indorsed 'approval . . . not required.'" Id. The court explained that endorsement of the earlier plan was not an "approval" of that plan as that term is used in clause b. Id. And the court went on to conclude that if the prior ANR determination had been made under § 81L clause c, it was not entitled to preclusive effect: "Nor can we agree that any determination in 1960 that the way was adequate is 'conclusive' upon the board in any subsequent application for an indorsement of another plan showing the same way. The 1960 decision was as to the particular plan." Id. at 324-325.

Goldman establishes, at least, that a planning board ANR approval based upon clause c -- that a way has "sufficient width, suitable grades and adequate construction" -- does not bind the town as to a subsequent ANR application involving the same way. Implicit in Goldman's conclusion is the recognition that the condition of the way can change over time or across its length, and thus each effort to rely on clause c for an ANR approval must be decided on the then-existing facts. So understood, Goldman embodies the collateral estoppel principle discussed above; collateral estoppel does not apply where the facts material to the litigation have changed.

Goldman thus supports the conclusion that collateral estoppel does not apply here. Although this case involves

clause b of § 81L rather than clause c, the material facts as to clause b are different now than in 1987.[13]

Finally, we find support for our conclusion in the principle that courts have discretion to ensure that offensive collateral estoppel is applied fairly, and in relevant provisions of the Restatement (Second) of Judgments, supra at §§ 28 and 29. Here, the applicant seeks to preclude a government board from litigating about the adequacy of a way, based upon an incorrect finding in a thirty year old judgment involving litigants other than themselves. Not only would such a result be unfair, but it would also undermine the public interest in ensuring that new lots have access to ways that are safe and convenient for travel. There are recognized principles that speak caution in applying offensive collateral estoppel in such circumstances. See Restatement (Second) of Judgments, supra at § 28(5). See also United States v. Mendoza, 464 U.S. 154, 159-161 (1984) (noting significant differences between

---

[13] We recognize that Goldman could be read as a broader rejection of collateral estoppel in the ANR context, but we do not so read it. Collateral estoppel doctrine has evolved since Goldman was decided. Collateral estoppel may apply to some findings made in ANR litigation -- for example, a fully and fairly litigated determination that a way is a public way -- provided the applicable collateral estoppel requirements are met. We also assume, without deciding, that offensive collateral estoppel can be applied against municipal entities in some circumstances. See generally Trustees of the Stigmatine Fathers, Inc. v. Secretary of Admin. & Fin., 369 Mass. 562, 566 (1976).

private and public litigants for collateral estoppel purposes, and holding that nonmutual offensive collateral estoppel cannot be applied against United States).

D. Remaining issues. For the first time on appeal, the applicant argues that the judge's subsidiary findings in Pharmer compel the conclusion that Munsell Street is a public way by prescription. This was not a basis argued in the applicant's motion for summary judgment, and we need not consider arguments raised for the first time on appeal. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006). Were we to exercise our discretion to consider the argument, however, we would conclude that the applicant's reliance on those findings in this case is misplaced. As discussed, the judge in the Pharmer litigation did not decide the prescription issue. To be given collateral estoppel effect, the prior findings must be essential to the judgment rendered, and here the findings that the plaintiffs seek to rely on do not satisfy that requirement. See Jarosz v. Palmer, 436 Mass. 526, 533 (2002) ("For a ruling to have preclusive effect, it must have a bearing on the outcome of the case").

The applicants did not argue in the Superior Court that issue preclusion should apply to the 1975 confirmation proceeding that identified Munsell Street as a public way. On appeal, the applicant cites no law suggesting that a street may

become public simply because it is shown as public on a plan that confirms title pursuant to G. L. c. 185, § 26A.  While the applicants contend on appeal that the title to, and boundaries of, Munsell Street were actually litigated in 1975, no such argument was made in the Superior Court.  Because this issue was not raised below, we do not decide whether public way status might be established through such an adjudication.

Conclusion.  In summary, the judge's conclusion that Munsell Street in front of lot B is a public way was an error of law.  Moreover, the applicant's summary judgment materials did not show that Munsell Street otherwise meets the criteria necessary to exclude the instant application from subdivision approval under § 81L.  The judgment in favor of the applicant is vacated.

So ordered.